Bryon J. Benevento (5254)
Kimberly Neville (9067)
DORSEY & WHITNEY LLP
Kearns Building
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1655
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
benevento.bryon@dorsey.com
neville.kimberly@dorsey.com

Steven C. Cherny (*pro hac vice*)
Jordan N. Malz (*pro hac vice*)
Leslie M. Schmidt (*pro hac vice*)
KIRKLAND & ELLIS, LLP
601 Lexington Avenue
New York, New York 10022
Telephone: 212-446-4965
Facsimile: 212-446-6460
steven.cherny@kirkland.com
jordan.malz@kirkland.com
leslie.schmidt@kirkland.com

Amanda Hollis (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS, LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: 312-862-2011
Facsimile: 312-862-2200
amanda.hollis@kirkland.com
elizabeth.cutri@kirkland.com

Amy Schofield Lemyre (*pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94014
Telephone: 415-439-1453
Facsimile: 415-439-1500
amy.lemyre@kirkland.com

*Attorneys for Plaintiff C. R. Bard, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| C. R. BARD, INC., a New Jersey corporation, <br><br> Plaintiff, <br><br> v. <br><br> MEDICAL COMPONENTS, INC., a Pennsylvania corporation, <br><br> Defendant. | **C. R. BARD, INC.'S OPPOSITION TO MEDICAL COMPONENT'S PARTIAL MOTION TO STAY PENDING REEXAMINATION** <br><br> Case No. 2:12-cv-00032-RJS-EJF <br><br> Judge Robert J. Shelby <br> Magistrate Judge Evelyn J. Furse |

Plaintiff C.R. Bard, Inc. ("Bard") hereby opposes Medical Component, Inc.'s ("Medcomp") Motion for a Partial Stay.  (D.I. 80).

Medcomp's proposal to extend the stay *only* as to Bard's patent infringement claims against it, and not as to Medcomp's patent infringement counterclaims against Bard, creates significant inefficiencies and should be rejected.  Medcomp's counterclaims involve the same technology and products—implantable access ports—at issue in Bard's infringement claims. The prior art asserted against Medcomp's patent will be extremely similar, if not identical, to that at issue with respect to the Bard Patents-in-Suit.  In fact, the Bard Patents-in-Suit are prior art to the Medcomp patent.  And, the claim construction and discovery issues relevant to Medcomp's counterclaims will substantially overlap with those for Bard's claims.  Claim terms in the Medcomp patent and the Bard Patents-in-Suit are similar, and arguments and positions taken by Bard and the USPTO during reexamination will potentially affect these terms.  Thus, if Medcomp's counterclaim goes forward while Bard's claims are stayed, the parties and the Court will spend time and resources addressing infringement, invalidity, prior art, claim construction, and discovery issues that will subsequently need to be duplicated once the stay of Bard's claims is lifted.  The parties are likely to use the same experts and fact witnesses to address both Bard's and Medcomp's claims, and litigating Medcomp's claims on a separate schedule will duplicate the burdens of litigation on those witnesses and substantially increase the parties' litigation costs. Medcomp's proposal also would require the Court to get up to speed twice on the same technology and for two different juries to have to learn the same technology.  Medcomp's proposal is neither economical nor efficient.

Moreover, Medcomp could have filed its infringement counterclaim as a separate case but chose to file it as a permissive counterclaim.  It thereby agreed that the same jury would hear

both Bard's and Medcomp's claims for infringement.  There is no reason to separate these claims now, and Medcomp points to no prejudice or economization that would occur as a result.

Additionally, this action is one of three Related Actions filed by Bard.[1]  The Court already has decided to keep these actions on the same schedule.  On July 25, 2012, the Court entered identical scheduling orders in each Related Action and indicated that it intends to reconsider whether the cases should be consolidated for purposes of claim construction.  Then, after AngioDynamics filed its motion to stay pending the outcome of its reexamination request, the Court ordered that all three Related Actions be stayed in their entirety.  For the same reasons the Court has decided to keep all three Related Actions on the same schedule, it should not now adopt Medcomp's proposal to allow one claim of one action to go forward while everything else is stayed.  The Court should deny Medcomp's motion for a partial stay.  Instead, the Court should stay Bard's Related Actions in their entirety.

## I.    Factual Background

Bard alleges in each of the three Related Actions that the defendants' implantable access ports infringe Bard's U.S. Patent Nos. 7,785,302 ("the '302 patent") and 7,947,022 ("the '022 patent").  (D.I. 69; AngioDynamics D.I. 68; Smiths D.I. 76).  In this action and the *AngioDynamics* action, Bard additionally asserts that the defendants' access ports infringe U.S. Patent No. 7,959,615 ("the '615 patent").  In its Answer to Bard's Complaint, Medcomp asserted, *inter alia*, a permissive counterclaim alleging that Bard's implantable port products infringed U.S. Patent No. 8,021,324 ("the Medcomp '324 patent").  (D.I. 72 ¶¶ 43-54).

The Bard Patents-in-Suit and the Medcomp '324 patent are similar to each other.  The '302 and '022 patents claim implantable access ports that include radiopaque identification

---

[1] The other Related Actions are *C.R. Bard, Inc. v. AngioDynamics, Inc.*, No. 12-cv-35 (D. Utah), and *C.R. Bard, Inc. v. Smiths Medical ASD, Inc.*, No. 12-cv-36 (D. Utah).

features that convey or identify the port as power injectable. (Ex. 1 at claim 1; Ex. 2 at claim 1). The '615 patent claims an implantable access port comprising "at least one structural feature of the access port identifying the access port subsequent to subcutaneous implantation as a particular type of access port." (Ex. 3 at claim 1). The Medcomp '324 patent claims an implantable access port having x-ray discernible indicia that indicates a pressure property of the port assembly. (Ex. 4 at claim 1). Below are illustrations of some of the access ports accused by each party:

| Medcomp Pro-Fuse® CT Port Accused of Infringement by Bard | Bard Power PowerPort MRI Implantable Port Accused of Infringement by Medcomp |
|---|---|
|  | |

On July 25, 2012, the Court entered identical scheduling orders in all three cases to avoid inefficiencies, such as duplicative claim construction proceedings, similar discovery disputes and dispositive motions, and overlapping document production and depositions. (D.I. 71; *see also* D.I. 43 at 8-9). The Court also stated that it would revisit consolidation of the three cases prior to the due date for claim construction briefing. (D.I. 71).

On August 20, 2012, AngioDynamics filed Requests for *Inter Partes* Reexamination of the Bard Patents-in-Suit. The Court stayed all three cases in their entirety on October 12, 2012, "to allow a decision from the United States Patent and Trademark Office ("USPTO") on the currently pending requests for *inter partes* reexamination [of the Bard Patents-in-Suit]."

(AngioDynamics D.I. 81; Smiths D.I. 88; Medcomp D.I. 78).   On November 7, 2012, the USPTO granted the requests for reexamination of claims 1-20 the '022 patent and claims 1-10 of the '302 patent.   (Exs. 5, 6).   On November 13, 2012, the USPTO granted the request for reexamination of claims 1-10 of the '615 patent and denied the request for reexamination of claim 11 of the '615 patent.   (Ex. 7).

The Court ordered the parties to "submit a proposed scheduling order to apply in all three Bard Actions within seven (7) days of the expiration of this stay" and stated that "[t]he parties may request an extension of the stay upon its expiration …."   (D.I. 78 at 3).   In light of the Court's previous stay order, the USPTO's decision to reexamine the Bard Patents-in-Suit, and the fact that at least Smiths and AngioDynamics had previously expressed a desire to stay the cases, Bard proposed extending the stay so long as all three cases and all claims therein are stayed.   (Ex. 8).   Smiths and AngioDynamics responded that they were agreeable to Bard's proposal.   (Exs. 9, 10).   Medcomp was the only party who did not agree.   It requested that Bard provide "a basis" to stay Medcomp's counterclaim.   (Ex. 11).   Instead of waiting for Bard's response, however, Medcomp filed a motion for a partial stay three hours later.   (D.I. 79, 80).

## II.   Legal Standard

A court has inherent power "to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).   This "can best be done [with] … the exercise of judgment, which must weigh competing interests and maintain an even balance."   *Id.* at 254-55. In deciding whether to stay litigation pending reexamination, courts typically consider (1) "whether a stay will simplify the issues"; (2) "whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party"; and (3) "whether discovery is complete and whether a trial date has been set." *Quest Software, Inc. v. Centrify Corp.*, No. 10-cv-859, 2011 WL 1085789, at *4 (D. Utah Mar. 21, 2011) (unpublished).

III.   **Argument**

A.   **A Stay of Only Bard's Claims Will Not Simplify the Issues, but Instead Guarantee Significant Duplication of the Parties' and This Court's Efforts and Resources.**

Staying all claims in all the Related Actions, as Bard proposes, would be efficient. Medcomp's proposal to allow only its infringement counterclaim to proceed would burden the Court and the parties because once the stay of Bard's claims is lifted, they will have to repeat much of the work performed during the litigation of Medcomp's infringement counterclaim, wasting judicial and party resources. Bard's Patents-in-Suit and Medcomp's '324 patent cover similar subject matter, i.e., implantable access ports that are identifiable as power injectable by radiopaque (or x-ray discernible) indicia. Because the subject matter of the patents is similar, there will likely be overlapping invalidity issues. Even if the Court stays Bard's claims, it will likely need to analyze the Bard Patents-in-Suit because they are prior art to the Medcomp '324 patent. Many of the same prior art references will likely be asserted by both parties given that 402 of the 409 references cited during the prosecution of the Medcomp '324 patent were also cited during prosecution of the Bard Patents-in-Suit. (*Compare* Exs. 1-3 with Ex. 4). In addition, if Medcomp asserts that the products that Bard accuses of infringing the Bard Patents-in-Suit are a commercial embodiment of the Medcomp '324 patent, the same Medcomp products Bard accuses of infringement may be relevant to the validity of the '324 patent (and vice-versa) because the commercial embodiment of a claimed invention is relevant to objective indicia of non-obviousness. *See, e.g., Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008). "In light of the overlap of products and issues, the[se claims] are likely to overlap substantially in discovery and factual and legal disputes" and proceeding with only Medcomp's infringement counterclaim "would impose a burden on the court and on [the parties]." *Sandisk*

*Corp. v. Phison Elecs. Corp.*, 538 F. Supp. 2d 1060, 1066 (W.D. Wis. 2008).  Both Bard's

claims and Medcomp's claims will involve discovery relating to the same Medcomp products.

Moreover, there will be overlapping claim construction issues.  Medcomp's '324 patent

and the Bard Patents-in-Suit share many similar claim terms and claim construction of the four

patents could be disposed of in a single claim construction proceeding.  Each of the patents is

drawn to an implantable venous access port assembly.  The power port claimed in each of the

patents includes a housing or body having a septum through which a needle can pass.  (Exs. 1-4).

Claim 1 of the Medcomp '324 patent and claim 5 of the '302 patent both specifically use the

term "needle-penetrable septum."   In addition, the Medcomp '324 patent, the '302 patent, and

the '022 patent each require indicia, visible via x-ray, that identify or convey that the port

assembly is power injectable.  (Exs. 1, 2, 4).  Examples of the similarities between the claims at

issue are shown in the following table:

| Medcomp '324 Patent Claim 1 | '302 Patent Claim 5 | '022 Patent Claim 1 |
|---|---|---|
| [T]he housing comprising a housing base having a bottom wall and X-ray discernable indicia embedded in the bottom wall, | [T]he assembly includes a radiopaque alphanumeric message observable through interaction with X-rays subsequent to subcutaneous implantation of the assembly, | [A]t least one radiopaque identification feature of the access port observable via imaging technology subsequent to subcutaneous implantation of the access port, |
| the X-ray discernable indicia comprising one or more characters that visually indicate, under X-ray examination, a pressure property of the port assembly. | and the alphanumeric message indicating that the assembly is power injectable. | the at least one radiopaque identification feature including one or more alphanumeric characters identifying the access port as a power-injectable port. |

These terms in the Bard Patents-in-Suit likely will be at issue during the reexamination, and

amendments or arguments made during the "reexamination proceeding … can affect the proper

interpretation and effective scope of [the] claims."  *Marine Polymer Techs., Inc. v. HemCon,*

*Inc.*, 672 F.3d 1350, 1365 (Fed. Cir. 2012) (en banc).  Because the claims of the Medcomp '324

patent are so similar to those of the Bard Patents-in-Suit, reexamination may also have an effect on the parties' claim construction positions.  For example, the PTO or Bard may take a position on the meaning of terms in the Bard Patents-in-Suit, like how the term is understood by a person of ordinary skill in the art, that may be relevant to the similar terms in Medcomp's '324 patent. It does not make sense for the Court to conduct claim construction relating to Medcomp's '324 patent before all of the potentially relevant information from the reexamination proceedings is available. As the Court observed, the PTO's "final decision on reexamination may simplify the issues in these cases."  (D.I. 78 at 2).

Thus, allowing Medcomp's infringement counterclaim to proceed would necessarily require duplication of invalidity and claim construction efforts.   Under analogous circumstances in *Sandisk*, the court issued a stay.  In *Sandisk*, the two asserted patents were similar to five other patents—all related to flash drives—that the plaintiff had asserted against many of the same defendants in a separate district court action, which had been stayed pursuant to 28 U.S.C. § 1659 pending the outcome of an International Trade Commission ("ITC") action involving those five patents.  538 F. Supp. 2d at 1062.  Defendants sought a stay of the *Sandisk* action pending the outcome of the ITC action.  *Id.* at 1065.  The court granted the stay because the two patents shared, *inter alia*, "some prior art and certain claim terms … with one of the five patents [in the already-stayed action]" and "[n]ot only would parallel proceedings be burdensome, but waiting for the commission to complete its investigation may help simplify [the two patent] case."  *Id.* at 1066, 1067.

This duplication of efforts as to at least invalidity and claim construction also extends to necessary witness testimony and other discovery.  In *FormFactor*, two of the five patents at issue, all related to measuring electrical characteristics of a semiconductor in the manufacturing

process, were also subject to ITC proceedings. *FormFactor, Inc. v. Micronics Japan Co.*, No. 06-cv-7159, 2008 WL 361128, at *1 (N.D. Cal. Feb. 11, 2008) (unpublished). Although the other three asserted patents ("non-overlapping patents") were not, the court stayed the entirety of the case "because of the potential duplication of discovery resulting from continuing the proceedings for the non-overlapping patents at issue but not those overlapping patents automatically stayed by statute." *Id.* at *2. Without a stay, the patents' inventors would need to be deposed multiple times—first about the non-overlapping patents, and then about the overlapping patents. *Id.* Similarly, allowing Medcomp's infringement counterclaim to proceed would likely involve duplicative testimony of many of the same witnesses, including Bard and Medcomp employees and experts. Such duplication of efforts is prejudicial. *Id.* at *3.

Medcomp's proposal simplifies nothing and guarantees only that the Court will need to address Medcomp's infringement counterclaim and Bard's affirmative claims, and much of the relevant discovery and motion practice, *in seriatim*, and ultimately at separate trials. Bard's proposal ensures that the claims in all Related Cases are addressed in an efficient manner, and one that is consistent with Medcomp's decision to file an infringement counterclaim instead of a separate suit. *See Nokia Corp. v. Apple Inc.*, No. 09-cv-791, 2011 WL 2160904, at *1 (D. Del. June 1, 2011) (unpublished) ("[A] partial stay regarding only [defendant's] claims would not simplify the case because the majority of this case will proceed regardless of whether [defendant's] claims are stayed.").

### B.     A Stay Of Only Bard's Affirmative Claims Would Unduly Prejudice Bard and Present Medcomp a Clear Tactical Advantage.

A stay of Bard's affirmative claims for relief, but not Medcomp's infringement counterclaim, will unduly prejudice Bard. As mentioned above, a partial stay runs the risk of inconsistent rulings on overlapping issues in claim construction and dispositive motion practice

and will greatly increase the cost and burdens of litigation on the parties and the Court.  This prejudice far outweighs Medcomp's hollow assertions that it will be prejudiced by a delay of its claims.  Medcomp points to no actual prejudice it will suffer while the reexamination is pending. Medcomp "can always move to recover damages … at the end of the litigation if [they] are successful on [their] claims."  *SP Techs., LLC v. HTC Corp.*, No. 08-cv-3760, 2009 WL 1285933, at *2 (N.D. Ill. May 6, 2009) (unpublished).   Medcomp's claim that it would be prejudiced by a stay is "undermined" by its failure to move for a preliminary injunction, *see Pac. Bioscience Labs., Inc. v. Pretika Corp.*, 760 F. Supp. 2d 1061, 1067 (W.D. Wash. 2011), and by its earlier argument for a more protracted schedule than the one Bard proposed that included no dates certain for anything after *Markman*.

Staying only Bard's claims also would give Medcomp a significant tactical advantage. Reexamination proceedings typically take 36 months, (Ex. 12), and the average time to trial in Utah is approximately 25 months, (Ex. 13), meaning that if Medcomp's infringement counterclaim proceeds, it would likely be tried before reexamination of Bard's patents was complete.  The tactical advantage Medcomp seeks here is clear: instead of entering Court as a defendant asserting an infringement counterclaim, Medcomp would be the patentee and Bard would be the infringer.  The jury that would otherwise hear Medcomp's infringement allegations as a counterclaim to Bard's own significant allegations would thus be deprived of the proper context for the parties' disputes.

As Medcomp admits, (D.I. 80 at 9), its infringement counterclaim is permissive, meaning that Medcomp could have filed this counterclaim as a separate infringement suit.  Fed. R. Civ. P. 13(a), (b).  Instead, Medcomp chose to assert its patent in this litigation, and in so doing acknowledged the overlap in subject matter between Bard's Patents-in-Suit and Medcomp's '324

patent.  Medcomp's desire to have its counterclaim proceed alone is a backdoor attempt to bifurcate its counterclaim from Bard's claims, ensuring that Medcomp will receive its own trial. Yet Medcomp has identified no "judicial efficiency [or] judicial resources" that would be conserved by having separate trials, nor has it explained why trying Bard's patent claims with Medcomp's "will unduly prejudice either party or confuse the jury." *York v. Am. Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996).  Indeed, where the technologies in the plaintiff's patents and the defendant's patent are similar, the claims should be tried together. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 498 F. Supp. 2d 734 (D. Del. 2007) (refusing to bifurcate counterclaim for patent infringement from plaintiff's claims for infringement where all patents related to methods of formation of a beverage can); *Boston Scientific Corp. v. Johnson & Johnson*, No. 02-cv-790, 2006 WL 3455009, at *4 (N.D. Cal. Nov. 29, 2006) (refusing to bifurcate patent infringement claims where "[t]he substance of the two proposed trials would overlap to a far greater degree than [defendant] suggests").

### C.      The Stage of Litigation Favors Staying Medcomp's Counterclaim.

Bard's claims for infringement are in a stage equal to Medcomp's infringement counterclaim.  Medcomp has produced no documents and filed a motion for protective order instead of offering substantive responses to Bard's interrogatories.  (D.I. 53).  No depositions have been taken or noticed, no claim construction briefing has occurred, and no *Markman* hearing has been set.  As Medcomp notes, no trial date has been set so "the Court and the parties will not be inconvenienced by the need to move a trial date." (D.I. 80 at 8).  Accordingly, to the extent that the stage of the litigation favors staying Bard's claims, it similarly favors staying Medcomp's counterclaims for infringement.

**IV.     Conclusion**

For all the above reasons, Bard asks that Medcomp's Motion for a Partial Stay be denied.


Dated:  November 29, 2012                    Respectfully Submitted:

By:   */s/Bryon J. Benevento*
         Bryon J. Benevento (5254)
         Kimberly Neville (9067)
         DORSEY & WHITNEY LLP
         Kearns Building
         136 South Main Street, Suite 1000
         Salt Lake City, UT 84101-1655
         P: 801.933.8958
         F: 801-880-9074
         benevento.bryon@dorsey.com
         neville.kimberly@dorsey.com

         Steven C. Cherny (*pro hac vice*)
         Jordan N. Malz (*pro hac vice*)
         Leslie N. Schmidt (*pro hac vice*)
         KIRKLAND & ELLIS, LLP
         601 Lexington Avenue
         New York, New York 10022
         Telephone: 212-446-4965
         Facsimile: 212-446-6460
         steven.cherny@kirkland.com
         jordan.malz@kirkland.com
         leslie.schmidt@kirkland.com

         Amanda Hollis (*pro hac vice*)
         Elizabeth A. Cutri (*pro hac vice*)
         KIRKLAND & ELLIS, LLP
         300 North LaSalle
         Chicago, Illinois 60654
         Telephone: 312-862-2011
         Facsimile: 312-862-2200
         amanda.hollis@kirkland.com
         elizabeth.cutri@kirkland.com

         *Attorneys for Plaintiff C. R. Bard, Inc.*