UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| C.R. BARD, INC., and BARD PERIPHERAL VASCULAR, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MEDICAL COMPONENTS, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S SHORT-FORM MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS (DOC. NO. 219)**<br><br>Case No. 2:12-cv-00032-RJS-DAO<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Defendant Medical Components, Inc.'s ("MedComp") Short-Form Motion to Compel the Production of Documents ("Mot.," Doc. No. 219) from Plaintiffs C.R. Bard, Inc. ("C.R. Bard") and Bard Peripheral Vascular, Inc. (collectively, "Bard"). The court held a hearing on this motion on November 16, 2020. (Doc. No. 225.) After considering the arguments of the parties and upon review of the briefs and their accompanying exhibits, the court DENIES the motion for the reasons set forth below.

## BACKGROUND

The parties are currently involved in extensive, multi-action, patent litigation.[1] In 2012, C.R. Bard[2] initiated this action ("Port I") against MedComp alleging MedComp was infringing three patents which C.R. Bard owned by assignment: the '022 patent; the '302 patent; and the '615 patent. (Am. Compl., Doc. No. 69.) MedComp filed counterclaims against Bard, alleging

---

[1] The court presumes an understanding of the relevant factual and procedural background and does not repeat it here except as otherwise relevant to this order.

[2] Bard Peripheral Vascular, Inc., was later added as co-plaintiff pursuant to the court's order on MedComp's Motion for Joinder of Parties. (Order Den. Mot. to Substitute Party and Granting Mot. for Joinder of Parties, Doc. No. 149.)

1

invalidity of C.R. Bard's three patents, non-infringement of the patents in suit, and that Bard was infringing MedComp's patent, the '324 patent.  (Am. Countercl., Doc. No. 208.)  In addition to Port I, Bard is involved in patent litigation in the District of Delaware, *C.R. Bard, Inc. & Bard Peripheral Vascular, Inc. v. AngioDynamics, Inc.*, Case No. 1:15-cv-00218 ("Port II"), which involves patents in the same family as those at issue here.  (Order Concerning Produc. of Elec. Stored and Hard Copy Info. ("Production Order") 1, Doc. No. 191.)  Lastly, Bard and MedComp are also litigating issues involving the same patent family before Judge Nielson in the District of Utah, *C.R. Bard, Inc. v. Medical Components, Inc.*, 2:17-cv-00754 ("Port III").  (*Id.*)

The parties have engaged in extensive discovery, including "hundreds of Requests for Production" and the production of more than 3.6 million pages of documents in Port III.  (*Id.*)  Further, Bard produced more than 2.3 million pages of documents in Port II.  (Mot. Ex. A 6, Doc. No. 219-1).  At issue here is approximately fifty-four patent committee documents listed in MedComp's Exhibit A (the "disputed documents"), which Bard clawed back in this litigation.  (*Id*. at 2–4; Mot. 2, Doc. No. 219.)

MedComp seeks to compel Bard to produce the disputed documents because, it argues, Bard produced these documents multiple times in all three lawsuits.  (Mot. 2, Doc. No. 219.)  MedComp claims the multiple productions stand as evidence that Bard failed to take reasonable measures to protect against disclosure of the documents.  (*Id*. at 2–3.)  As such, according to MedComp, Bard can no longer claim the disclosures were inadvertent.  (*Id.*)  Bard admits the documents were produced once—in Port II—but claims it was an inadvertent disclosure.  (Bard's Opp'n to MedComp's Short Form Mot. to Compel the Prod. of Documents ("Opp'n") 1–2 & n.2, Doc. No. 222.)  Bard disputes any of the documents at issue here were produced in Port III and

claims the documents were only reproduced in Port I because the court ordered Bard to do so. (*Id.*)

## DISCUSSION

Rule 502 of the Federal Rules of Evidence provides the disclosure of privileged information does not constitute a waiver of privilege if: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b). The party claiming the disclosure was inadvertent has the burden to prove these elements. *Hatfield v. Cottages on 78th Cmty. Ass'n*, No. 2:19-cv-00964, 2020 U.S. Dist. LEXIS 72117, at *9 (D. Utah Apr. 23, 2020) (unpublished). When analyzing these issues, a court should consider "the overriding issues of fairness and fair play." *United States v. Basic Research, LLC*, No. 2:09-cv-00972, 2010 U.S. Dist. LEXIS 155541, at *5 (D. Utah Mar. 17, 2010) (unpublished).

Underpinning Rule 502 is the "widespread complaint that litigation costs necessary to protect against waiver of attorney-client privilege or work product have become prohibitive due to the concern that any disclosure (however innocent or minimal) will operate as a subject matter waiver of all protected communications or information." Fed. R. Evid. 502 *advisory committee's note*. As the rule's advisory committee explained, "[t]his concern is especially troubling in cases involving electronic discovery." *Id.*; *see also Hopson v. Mayor & City Counsel of Baltimore*, 232 F.R.D. 228, 244 (D. Md. 2005) (finding that insisting on "record-by-record pre-production privilege review, on pain of subject matter waiver, would impose upon parties costs of production that bear no proportionality to what is at stake in the litigation," especially where electronic discovery can involve millions of documents).

3

### A. Disclosures

In its motion, MedComp argues Bard cannot claw back the patent committee documents because Bard already produced them several times—in Port II, Port III, and now in Port I. (Mot. 2, Doc. No. 219.)  MedComp, citing its Exhibit A, suggests Bard previously produced, and then clawed back, the disputed documents in 2018 in the Port III action.  (*Id.*)  And now, Bard seeks to do the same in Port I, and separately, in Port II.  (*Id.*)  In other words, MedComp alleges three disclosures of these documents.  (*Id.*)  However, at the hearing on its motion, MedComp indicated that only some of the same documents at issue here were also at issue in Port III.  (Hr'g Tr. 5:12–19, Doc. No. 255.)  And MedComp conceded the privilege issue pending in Port III is different.  (*Id.* at 6:4–10.)  For its part, Bard contends none of the documents at issue here were clawed back previously (before June 2020).  (*Id.* at 18:7–15, 19:13–20.)

It is not clear from the record before the court that any of the same documents at issue in this motion were separately produced and then clawed back in the Port III litigation.  Although MedComp's Exhibits B through E contain emails regarding two prior claw backs and other discovery disputes, there is no indication the documents referred to are the disputed documents at issue here.  What MedComp's Exhibit A does establish is that the same documents *were* produced and clawed back in both the Port I and Port II litigation.  Exhibit A contains two June 2020 emails from Bard's counsel pertaining to the claw backs in Port I and Port II, subsequent to the court's Production Order.  (Mot. Ex. A, Doc. No. 219-1.)  Because nothing in the record before the court establishes the same disputed documents were produced in Port III, the court

considers only that the disputed documents were produced once in Port II, and then reproduced in Port I.

### B. Inadvertence

"Courts have not established a bright-line rule for determining whether a document was inadvertently produced; instead, courts look at the circumstances surrounding the disclosure." *Braun v. Medtronic Sofamor Danek, Inc.*, No. 2:10-cv-01283, 2013 U.S. Dist. LEXIS 145477, at *8–9 (D. Utah Oct. 7, 2013) (unpublished) (quoting *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008)).  MedComp argues Bard's multiple disclosures of the disputed documents in this case cannot be viewed as inadvertent.  However, the critical disclosure occurred in Port II.  Although this disclosure occurred as part of the discovery production, it was not discovered until June 2020—after the Port II trial—because the opposing party in Port II never tried to use the disputed documents.  (*See* Hr'g Tr. 12:17–21, Doc. No. 255; Mot. Ex. A 6, Doc. No. 219-1.)  MedComp's Exhibit A[3] includes an email from June 15, 2020, from Bard's Port II counsel explaining the disputed documents were "reviewed and inadvertently produced."  (Mot. Ex. A 5–7, Doc. No. 219-1.)  In the email, Bard's Port II counsel explained the disputed documents were "designated privileged by the vendor managing the privilege review.  However, an e-discovery staff member subsequently mistakenly added [them] to a production set."  (*Id.* at 6; *see also* Hr'g Tr. 23:5–10, Doc. No. 255.)  Bard's assertion that this was an inadvertent mistake is supported by the fact that the disputed documents were

---

[3] Also reproduced as Bard's Exhibit 1.  (Opp'n Ex. 1, Doc. No. 222-1.)

produced without any confidentiality label, while many other patent committee documents were listed on the Port II privilege log. (Hr'g Tr. 22:15–23:1, Doc. No. 255.)

Bard then reproduced its Port II disclosure in Port I as required by the Production Order, where the court ordered Bard to reproduce all Port II discovery within fourteen days. (Production Order 3, Doc. No. 191.) The order did not give Bard discretion to produce only some documents; it ordered a blanket reproduction. (*Id*.) The disputed documents were necessarily included in this reproduction. Importantly, at the time of the reproduction, Bard was not yet aware privileged documents had been disclosed in Port II—and were being redisclosed pursuant to the Production Order. (Mot. Ex. A 6–7. Doc. No. 219-1; *see also* Hr'g Tr. 22:12–19, Doc. No. 255.) Also significant is the fact that Bard's counsel in Port I is different from its counsel in Port II. (Hr'g Tr. 22:12–14, Doc. No. 255.)

This factual background shows Bard's disclosure of the disputed documents in Port II was inadvertent. And Bard's disclosure of the disputed documents in this litigation, Port I, arose entirely from the Production Order, which Bard complied with before becoming aware of its inadvertent disclosure of the disputed documents in Port II. Thus, it was also inadvertent. It would not have been possible for Bard to review all 2.3 million pages it reproduced in this litigation in the two-week period allotted for reproduction of the Port II discovery. And where Bard was unaware it had produced privileged material in Port II, it had no reason to request additional time. Moreover, requiring an additional, full privilege review of millions of pages of documents, which had previously been reviewed, would be contrary to the very purpose of Rule 502.

### C. Reasonable Steps to Prevent Disclosure

Given the circumstances outlined above, it was reasonable for Bard to reproduce Port II's documents without a subsequent review, particularly where the Port II production had been reviewed for privilege by a hired vendor and Bard was unaware of the disclosure of the disputed documents at the time of the reproduction. At the hearing on this motion, MedComp argued Bard was made aware of privilege issues regarding its production in the Port III case in April or May 2018—and that because some of the same documents had been produced in Port II, Bard was on notice of the need to review its production in Port II as of that date. (Hr'g Tr. 17:2–18, 29:4–19, Doc. No. 255.) According to MedComp, a review of the Port II production at that time would have prevented the disclosure of privileged material in Port I.

This connection is too attenuated. It is unreasonable to expect Bard to review millions of pages produced in Port II simply because an inadvertent disclosure of approximately ninety privileged documents was discovered in Port III[4] and some of the documents in the two cases overlapped. Even if such an extensive action could have prevented the inadvertent disclosure of the fifty-four disputed documents in Port I, in light of proportionality principles, Bard did not act unreasonably in declining to undertake an independent review of millions of pages of documents in a separate litigation upon learning of a small, inadvertent disclosure in a case

---

[4] *See* Short Form Disc. Mot. for Determination that ESI Docs. Need Not be Returned 2, Port III Doc. No. 117; Order Den. Pls.' Short Form Mot. to Compel Return of Inadvertently Produced Privileged Docs. (ECF No. 116) and Den. Def.'s Short Form Discovery Mot. for Determination that ESI Docs. Need Not be Returned (ECF No. 117) ¶ 2, Port III Doc. No. 142.

involving some of the same documents. In the unique circumstances of this case, Bard took reasonable steps to prevent disclosure.

### D. Prompt Steps to Rectify the Error

Lastly, Bard promptly took steps to rectify the error. Due to the large production size in Port II, and the fact that the disputed documents were not used as deposition or trial exhibits in that litigation, (Mot. Exhibit A 6, Doc. No. 219-1), it is reasonable that Bard first discovered the disclosure when MedComp filed its June 9, 2020 surreply in Port III. (Opp'n 1, Doc. No. 222.) Promptly after the filing of MedComp's surreply,[5] Bard investigated, counsel for Port II and Port I consulted, and Bard clawed back the documents in both cases. (Mot. Ex. A, Doc. No. 219-1; Opp'n 1, Doc. No. 222; Hr'g Tr. 24:7–16, 25:21–26:6, Doc. No. 255.) Accordingly, once Bard was aware of the disclosure, it took prompt steps to rectify the error.

## CONCLUSION

For the above described reasons, Bard did not waive its claimed privilege over the disputed documents. Accordingly, the court DENIES MedComp's Motion to Compel the Production of Documents (Doc. No. 219).

DATED this 10th day of December, 2020.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[5] At the motion hearing, Bard's counsel indicated it clawed back the documents within twenty days. (Hr'g Tr. 25:21–26:6, Doc. No. 255.)