UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| C.R. BARD, INC., and BARD PERIPHERAL VASCULAR, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MEDICAL COMPONENTS, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S SHORT-FORM MOTION TO COMPEL PRODUCTION OF CLAWED BACK DOCUMENT (DOC. NO. 231)** <br><br> Case No. 2:12-cv-00032-RJS-DAO <br><br> Judge Robert J. Shelby <br><br> Magistrate Judge Daphne A. Oberg |

Before the court is Defendant Medical Components, Inc.'s ("MedComp") Short-Form Motion to Compel Production of Clawed Back Document ("Mot.," Doc. No. 231). The court held a hearing on this motion on November 24, 2020. (Doc. No. 247.) After considering the arguments of the parties and upon review of the briefs and their accompanying exhibits, the court GRANTS the motion for the reasons set forth below.

BACKGROUND

The parties are currently involved in extensive, multi-action, patent litigation.[1] In 2012, C.R. Bard, Inc.[2] initiated this action ("Port I") against MedComp alleging MedComp was infringing three patents which C.R. Bard owned by assignment: the '022 patent; the '302 patent; and the '615 patent. (Am. Compl., Doc. No. 69.) In addition to Port I, C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard") are involved in patent litigation in the District of

---

[1] The court presumes an understanding of the relevant factual and procedural background and does not repeat it here except as otherwise relevant to this order.

[2] Bard Peripheral Vascular, Inc., was later added as co-plaintiff pursuant to the court's order on MedComp's Motion for Joinder of Parties. (Order Den. Mot. to Substitute Party and Granting Mot. for Joinder of Parties, Doc. No. 149.)

Delaware, *C.R. Bard, Inc. & Bard Peripheral Vascular, Inc. v. AngioDynamics, Inc.*, Case No. 1:15-cv-00218 ("Port II"), which involves patents in the same family as those at issue here. (Order Concerning Prod. of Elec. Stored and Hard Copy Info. 1, Doc. No. 191.) Lastly, Bard and MedComp are also litigating issues involving the same patent family before Judge Nielson in the District of Utah, *C.R. Bard, Inc. v. Medical Components, Inc.*, 2:17-cv-00754 ("Port III"). (*Id.*)

Here, MedComp seeks to compel production of a clawed-back document, BARD_AD_2296958, on the basis that it is not privileged and, even if it is privileged, Bard waived the privilege. (Mot. 2, Doc. No. 231.) MedComp contends Bard waived privilege by intentionally producing the document in Port II and by failing to act in a timely manner following notice of disclosure by MedComp. (*Id.*)

## LEGAL STANDARDS

Rule 502 of the Federal Rules of Evidence provides the disclosure of privileged information does not constitute a waiver of privilege if: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b). The party claiming the disclosure was inadvertent has the burden to prove these elements. *Hatfield v. Cottages on 78th Cmty. Ass'n*, No. 2:19-cv-00964, 2020 U.S. Dist. LEXIS 72117, at *9 (D. Utah Apr. 23, 2020) (unpublished). When analyzing these issues, a court should consider "the overriding issues of

fairness and fair play." *United States v. Basic Research, LLC*, No. 2:09-cv-00972, 2010 U.S. Dist. LEXIS 155541, at *5 (D. Utah Mar. 17, 2010) (unpublished).

Rule 502 does not require a party to conduct "a post-production review to determine whether any protected communication or information has been produced by mistake" in order to avoid waiving privilege. Fed. R. Evid. 502(b) advisory committee's note. However, the rule does require the producing party "follow up on any obvious indications that a protected communication or information has been produced inadvertently." *Id.*; *see also United States v. Koerber*, No. 2:09-cr-302, 2011 U.S. Dist. LEXIS 59579, at *18–19 (D. Utah June 2, 2011 (unpublished) (finding defendant acted promptly and reasonably to rectify inadvertent disclosure where he twice asked that documents be set aside as privileged after being notified of the inadvertent disclosure).

In *Mycone Dental Supply Co Inc.*, the Northern District of California found the producing party failed to promptly rectify an inadvertent disclosure when it took "45 days to research its assertion of privilege before sending its clawback letter." *Mycone Dental Supply Co Inc. v. Creative Nail Design Inc.*, No. C-12-00747, 2013 U.S. Dist. LEXIS 126336, at *12 (N.D. Cal. Sep. 4, 2013) (unpublished). According to the court, the producing party "should have recalled the document that was used in the deposition immediately after the deposition and then conducted a more thorough and timely investigation into the rest of the production after the initial clawback request," rather than taking seven weeks to look into the matter. *Id.* at *8–9.

ANALYSIS

Pursuant to a court order, Bard reproduced in this case, Port I, its entire Port II production. (Bard's Opp'n to MedComp's Short Form Mot. to Compel the Prod. of Clawed

Back Doc. ("Opp'n") 1, Doc. No. 245; *see also* Order Concerning Prod. of Elec. Stored and Hard Copy Info., Doc. No. 191.)

The parties' communications regarding the disputed document began on July 28, 2020, when MedComp sent Bard a five-page chart listing documents it believed Bard produced in whole or in greater part in the Port I case than it had in other litigation.[3] (Ex. C to Mot. 6, Doc. No. 231-3; Opp'n 1, Doc. No. 245; Ex. 2 to Opp'n, Doc. No. 245-2.) In other words, according to MedComp, Bard redacted more information in the documents produced in other litigation than it did in the documents produced in Port I (and Port II).[4] MedComp's chart listed BARD_AD_2296958, the document at issue here, as a document produced in whole or in greater part in Port I and Port II. (Ex. 2 to Opp'n 5, Doc. No. 245-2.) According to Bard, it immediately reviewed the chart. (Opp'n 1, Doc. No. 245.) Bard explains that, with one exception, it became apparent the "documents MedComp identified as corresponding to one another were, in fact, different documents." (*Id.* at 1–2.) On August 4, 2020 Bard responded to MedComp, explaining that only one document in the chart had a duplicate which had been produced, and that the redacted material in the Port III version of this one document was not relevant to the case. (Ex. C to Mot. 5, Doc. No. 231-3.)

On August 28, MedComp responded, clarifying its position with regard to the documents in the chart: "Bard's production of elsewhere-redacted material in an unredacted document waives any privilege which might otherwise apply." (*Id.* at 3–4.) MedComp pointed out that

---

[3] The parties' email exchanges address myriad other issues not directly relevant to this motion.

[4] MedComp entitled its chart "Bard Documents That Bard Redacted in Bard-MedComp Utah 2017 Case but Produced in Whole or Greater Part in Bard-MedComp Utah 2012 Case (List As of July 28, 2020)." (Ex. 2 to Opp'n, Doc. No. 245-2.) Because the Port II production was reproduced in Port I, the columns reference and compare the Port II and Port III productions.

even if the documents were not exact duplicates, the same material (i.e., material redacted in other documents), could be contained in them. (*Id.* at 4.)

On September 3, 2020 Bard responded:

> MedComp points to different documents that have allegedly different redactions in Port II and Port III. MedComp has not explained why Bard must redact different documents in the same way, nor has MedComp provided any basis for the suggestion that the same text that is redacted in Port III is unredacted in Port II. MedComp is asking Bard to analyze a large number of non-identical documents to determine whether the text redacted in Port III was not redacted in Port II. That is a costly and unnecessary exercise that Bard is not willing to undertake.

(*Id.* at 2.)

On September 16, the parties met and conferred and Bard again reiterated that it provided the chart to its vendor "to confirm if the documents were the same, and if so, if they have been produced with inconsistent redactions." (Ex. 4 to Opp'n 2, Doc. No. 245-4.) The vendor confirmed, that with the exception of one, the documents were not the same, so it could not answer this question. (*Id.*) In light of this, Bard asked MedComp to explain its "contention that the material redacted in the Port III documents it identified was produced without redaction in the Port II documents it identifies." (*Id.*) MedComp responded that "when the documents are viewed side-by-side, the unredacted text is identical, so MedComp concluded that the text that is redacted is also identical." (*Id.*) On September 18, Bard provided examples of documents in the chart that were not identical and renewed its request that MedComp "identify the basis for its contention that the Port II documents in your July 28th list contain information that is redacted in the Port III documents on your list." (Ex. 5 to Opp'n 1, Doc. No. 245-5.) MedComp did not reply. (Opp'n 2, Doc. No. 245.) After waiting several weeks for a response, Bard analyzed the documents and identified one document that was inadvertently produced in Port II without

redactions. (*Id.*) Bard then clawed back BARD_AD_2296958 on October 27, 2020. (Ex. B to Mot. 1, Doc. No. 231-2.)

The above facts make it clear Bard did not promptly take reasonable steps to rectify the error once it was put on notice. No doubt, there was some initial confusion as to MedComp's assertions when it provided Bard with a list of documents it alleged were produced with redactions in other litigation and without redactions in Port I. But at least as of MedComp's August 28 email, Bard was on notice that MedComp believed the listed documents were potentially privileged documents produced without redactions, and that MedComp believed the privilege was waived.

Bard posits that it did not understand MedComp's assertion that the documents were related and that it continually asked MedComp to explain the basis for its argument but received no real answer. This misses the point. As of August 28, Bard was on notice of the need to conduct a privilege review, not a cross-reference analysis. Once Bard was on notice that the Port I and Port II documents listed were produced with potentially privileged information unredacted, Bard had an obligation under Rule 502 to take prompt and reasonable steps to rectify this error. At a minimum, it was necessary for Bard to request that the listed documents be set aside as privileged while it reviewed the documents to see if they contained privileged information. Instead, it chose not to undertake this "costly and unnecessary exercise." Once its vendor confirmed the documents were not duplicates, Bard took no action other than continually requesting that MedComp explain the basis for the cross-references in the chart. Regardless of whether Bard understood MedComp's assertion that the documents were similar, it was

unreasonable for Bard to wait almost two months to review the documents MedComp indicated were produced without redactions.

Bard's actions were neither prompt nor reasonable. By failing to take prompt, reasonable steps to rectify the disclosure, Bard waived privilege to BARD_AD_2296958.[5]

## CONCLUSION

For the above-described reasons, the court GRANTS MedComp's motion. Bard must produce the unredacted version of BARD_AD_2296958 to MedComp within fourteen days of the date of this order.

DATED this 4th day of March, 2021.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[5] Because the court finds Bard waived privilege by failing to promptly and reasonably rectify the disclosure, MedComp's other bases for production are not addressed.