Alfred W. Zaher (*pro hac vice*)
Maryellen Madden (*pro hac vice*)
Peter Breslauer (*pro hac vice*)
Stephanie K. Benecchi (*pro hac vice*)
Patrick J. Farley (*pro hac vice*)
MONTGOMERY McCRACKEN WALKER
   & RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 772-1500
Fax: (215) 772-7620
azaher@mmwr.com
mmadden@mmwr.com
pbreslauer@mmwr.com
sbenecchi@mmwr.com
pfarley@mmwr.com

*Attorneys for Defendant/Counterclaimant Medical Components, Inc.*

J. Mark Gibb (5702)
Clinton E. Duke (9784)
DENTONS DURHAM JONES PINEGAR PC
111 South Main Street, Suite 2400
Salt Lake City, Utah 84111
Tel: (801) 415-3000
Fax: (801) 415-3500
mark.gibb@dentons.com
clinton.duke@dentons.com

Michael Hayes (*pro hac vice*)
HORN WILLIAMSON LLC
1500 JFK Boulevard, Suite 1700
Philadelphia, Pennsylvania 19103
Tel: (215) 553-4333
Fax: (215) 334-7336
mhayes@hornwilliamson.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MEDICAL COMPONENTS, INC., <br><br> Defendant. | Case No. 2:12-cv-00032-RJS-DAO <br><br> **MEDCOMP'S OPENING CASE MANAGEMENT BRIEF REGARDING INEQUITABLE CONDUCT** <br><br> Chief Judge Robert J. Shelby <br> Magistrate Judge Daphne A. Oberg |

Pursuant to the Court's July 27, 2021 Docket Text Order (ECF 721), and in accordance with the Court's direction at the hearing that day, Defendant and Counterclaimant Medical Components, Inc. ("MedComp") respectfully submits its Opening Case Management Brief.

## I.   BACKGROUND

At the July 27, 2021 hearing, the Court sought comments from counsel regarding the best path forward for efficient management of this case in light of the Court's July 22, 2021 Order invalidating Bard's patents-in-suit (the "Invalidity Order"). To avoid piecemeal appeals and further efficiency for the Court and the parties, MedComp proposed that the Court decide MedComp's inequitable conduct claim, which is only heard in equity, typically in a short bench trial. Then, any appeal to the Federal Circuit would include all potentially dispositive issues. *See* Ex. A, 7/27/21 Hr'g Tr. ("Tr."), at 8:3-17.

Counsel for Bard disagreed, contending: (1) inequitable conduct on the ground of *new matter* would require the Court to construe Bard's invalidated claims (Tr., at 15:1-3); and (2) determination of *new matter* is a fact issue tried to a jury, based upon unspecified Supreme Court precedent.

Recognizing the parties' different positions, this Court directed counsel to file case management briefs to help the Court determine how best to proceed. *Id.* at 18:16-20, 19:14-19; ECF 721.

## II.   ARGUMENT

MedComp respectfully submits to avoid piecemeal adjudication and appeals, judicial efficiency strongly supports proceeding now with a bench trial on Bard's alleged inequitable

1

conduct.[1]  An inequitable conduct bench trial is short and efficient and will not result in unreasonable delay.  If this Court decides Bard committed inequitable conduct by introducing new matter, then Bard is certain to appeal that decision.  Accordingly, the finding of invalidity and inequitable conduct should go up on appeal together so that the Federal Circuit can at once resolve all potentially dispositive issues.

Claims of inequitable conduct are an equitable remedy, heard and decided in equity in a bench trial and are not tried to a jury.  At the July 27 hearing, Bard incorrectly indicated inequitable conduct is tried to a jury. Tr. at 14:9-14.  The Federal Circuit held in *Am. Calcar v. Am. Honda Motor Co.*, 651 F.3d 1318, 1333 (Fed. Cir. 2011), "[i]nequitable conduct is equitable in nature, with *no right to a jury*, and the trial court has the obligation to resolve the underlying facts of materiality and intent." (emphasis added).  *See, e.g.*, Tr. at 15:15-25.

At the hearing, Bard also argued  that this Court must first construe the asserted claims of each of the invalidated Bard patents before it can rule on inequitable conduct.  This is illogical and unnecessary when new matter is the fraud.  The issue before this Court for inequitable conduct is simply *whether new matter was added* with wrongful intent.  *See* Tr. at 8-11.  Bard's requested claim language interpretation is not instructive on the wrongful addition of new matter.  The speedy determination of MedComp's inequitable conduct claim, before an appeal under Rule 54(b), will avoid piecemeal—and potentially unnecessary—appeals to the Federal Circuit.

---

[1] As this Court recognized in the prior hearing, appellate courts "don't like to take up issues piecemeal because it's inefficient" and "district courts should invoke their inherent authority when necessary to ensure that we're giving effect to the important commandment of Rule 1 of the Federal Rules of Civil Procedure, that we seek the just, speedy and inexpensive resolution of matters."  Tr. at 8:18-25, 4:9-13.  MedComp's proposal advances these principles.

2

A. **An Inequitable Conduct Trial to the Bench, Prior to any Appeal of the Court's July 22, 2021 Invalidity Order, Will Serve Judicial Efficiency and Economy**

MedComp's inequitable conduct claim is based on Bard's inventor and lead patent counsel's introduction of impermissible new matter into the application that matured into the '302 patent-in-suit in violation of 35 U.S.C. §§ 112 and 132. Four additional Bard "indicia" patents (US 8,382,723; US 8,603,052; US 8,585,663; and US 9,682,186), all of which are continuations of Bard's '302 patent, are at issue in the 2017 Litigation before Judge Nielson (as well as a single method patent [US 8,025,639] unrelated to the discussion here). Should this Court find Bard procured the parent '302 patent by inequitable conduct, then the '302 patent will be held unenforceable, and the continuations and continuations-in-part of the '302 patent here and in the 2017 Litigation, will be rendered unenforceable in accordance with the doctrine of infectious unenforceability.

Given the dispositive impact of a finding of inequitable conduct on this case, judicial economy favors that it be decided before this Court, and before the Federal Circuit considers other issues that a determination of inequitable conduct may ultimately render moot.

The equitable defense of inequitable conduct finds its roots in three Supreme Court cases applying the doctrine of unclean hands to patent prosecution. *See Therasense v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (citing *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944) (*overruled on other grounds by Standard Oil Co. v. United States*, 429 U.S. 17 (1976); and *Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806 (1945)). The inequitable conduct doctrine effectively ends patent cases: patents

3

are rendered unenforceable where it is found that egregious misconduct or fraud was used to procure them from the USPTO. *Therasense*, 649 F.3d at 1285. The doctrine encompasses "affirmative acts of misconduct intended to deceive both the PTO and the courts." *Id.* at 1287. Where misconduct "is highly material, 'less evidence of intent will be required in order to find that inequitable conduct has occurred.'" *eSpeed, Inc. v. Brokertec USA, L.L.C.*, 480 F.3d 1129, 1135 (Fed. Cir. 2007) (citing *PerSeptive Biosystems, Inc. v. Pharmacia Biotech*, 225 F.3d 1315, 1319 (Fed. Cir. 2000).

> As the doctrine of inequitable conduct has evolved, so, too, has the remedy:
>
> Perhaps most importantly, the remedy for inequitable conduct is the "atomic bomb" of patent law. Unlike validity defenses, which are claim specific, *see* 35 U.S.C. § 288, inequitable conduct regarding any single claim renders the entire patent unenforceable. Unlike other deficiencies, inequitable conduct cannot be cured by reissue, or reexamination. Moreover, the taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and applications in the same technology family. Thus, a finding of inequitable conduct may endanger a substantial portion of a company's patent portfolio.

*Therasense*, 649 F.3d at 1288-89 (citations omitted).

This remedy, rendering unenforceable other related patents and applications in the same technology family, is referred to as "infectious unenforceability." Under infectious unenforceability, inequitable conduct in the prosecution of one patent renders a related patent unenforceable where the inequitable conduct has "an immediate and necessary relation" to the enforcement of the related patent. *See Consol. Aluminum*, 910 F.2d 804, 810-11 (Fed. Cir. 1990) ("the prosecution histories of the patents-in-suit established that inequitable conduct in prosecuting the patent had an "immediate and necessary relation" to the equity sought, namely enforcement of the related patents); *see also Hoffman-La Roche, Inc. v. Promega Corp.*, 319 F.

4

Supp. 2d 1011, 1017 (N.D. Cal. 2004); *Guardant Health, Inc. v. Found. Med., Inc.,* No. CV 17-1616-LPS-CJB, 2020 WL 2477522, at *10 (D. Del. Jan. 7, 2020) (*citing eSpeed, Inc. v. Brokertec USA, L.L.C.*, 417 F. Supp. 2d 580, 595 (D. Del. 2006), *aff'd*, 480 F.3d 1129 (Fed. Cir. 2007)).

> In *Guardant Health*, Court noted that under Federal Circuit precedent:
>
> [I]f a patentee commits inequitable conduct during prosecution of one patent, then a later continuation patent will almost surely be found to bear an "immediate and necessary relation" to the patent obtained by way of the inequitable conduct. *Robocast, Inc. v. Apple Inc.*, 39 F. Supp. 3d 552, 571 (D. Del. 2014); *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 2121395, at *4-5 (D. Del. May 15, 2019). This is in significant part because continuation applications are understood to "relate to the same invention." *Robocast, Inc.*, 39 F. Supp. 3d at 571 (noting that "[i]f the same patentee split the claims into two applications, why should the result be any different?" and that "[t]o hold otherwise would fly in the face of the rule that inequitable conduct renders all claims unenforceable, 'not just the particular claims to which the inequitable conduct is directly connected.'") (quoting *J.P. Stevens & Co., Inc. v. Lex Tex Ltd, Inc.*, 747 F.2d 1553, 1561 (Fed. Cir. 1984)). And more generally, with regard to the invocation of the infectious unenforceability doctrine, courts have found that if the patent-at-issue is linked to an infectious patent (or application) through a common claim of priority, this fact also helps to establish the requisite "immediate and necessary relation." *See Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.,* 2011 WL 13134896, at *7 (denying a motion to dismiss an inequitable conduct counterclaim based on the doctrine of infectious unenforceability, in part because the allegations were that plaintiff claimed priority for the patent-at-issue based on the infectious patent); *eSpeed, Inc.*, 417 F. Supp. 2d at 596 (finding, after a bench trial, that the patent-at-issue was unenforceable because, *inter alia*, it "claim[ed] priority from the [infectious] application").

*Guardant Health,* 2020 WL 2477522, at *10.

Here, Bard's '302 patent, which contains claims directed to the new matter that was introduced through Bard's inequitable conduct, is a parent of both the '615 patent (a continuation of the '302 patent) and the '022 patent (a continuation-in-part of the '302 patent). Further, the '302 patent is the parent of four of the five patents in the case before Judge Nielson—the '186,

5

'723, '052, and '663 patents *are all continuations of the '302 parent patent*, and each one contains claims directed to the new matter Bard introduced through inequitable conduct. Therefore, all of these patents "relate to the same invention" and "bear an 'immediate and necessary relation' to the patent Bard obtained by inequitable conduct. *Robocast, Inc.,* 39 F. Supp. 3d at 571. It is undisputed that these patents all share the same claimed priority date and are part of the same patent family.

In *Therasense*, the Federal Circuit suggested that infectious unenforceability could apply to patents not in-suit and even to pending applications (which cannot be "patents-in-suit"): "the taint of a finding of inequitable conduct can spread from a single patent to render unenforceable other related patents and *applications* in the same technology family." *Therasense,* 649 F.3d at 1288 (emphasis added). Therefore, all the patents and applications in the same technology family and priority of the '302 patent may be rendered unenforceable by infectious unenforceability should MedComp prevail on its inequitable conduct claims.

If the Federal Circuit affirms a finding of inequitable conduct on appeal, then it will not need to reach any other grounds of invalidity. *GS Cleantech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1332 n.16 (Fed. Cir. 2020) ("As we affirm the District Court's determination that the Patents-in-Suit are unenforceable due to the inequitable conduct, we need not address CleanTech's additional arguments regarding the other grounds upon which the District Court ruled the Patents-in-Suit invalid), *cert. denied*, 141 S. Ct. 1377 (2021); *see also Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1308 (Fed. Cir. 2018) (where a trial court's judgment that a "patent is unenforceable for inequitable conduct" is affirmed, this court need

"not reach the [trial] court's summary judgment of obviousness, claim construction order, or summary judgment of no direct infringement").

Therefore, it will best serve judicial efficiency and economy to proceed with a bench trial on inequitable conduct before any appeal to the Federal Circuit from the Court's Invalidity Order. Because final adjudication of the case may turn on the issue of inequitable conduct, it is most efficient to first try the inequitable conduct claim to the bench, thereafter allowing for an appeal of these issues to the Federal Circuit.

Judicial economy and conservation of judicial resources favors a bench trial on MedComp's inequitable conduct claim to avoid the multiple, piecemeal appeals that almost certainly will result otherwise.

### B.   The Logistics of an Inequitable Conduct Trial

Notwithstanding Bard's argument at the July 27 hearing, this Court will not need to construe any patent claims before proceeding with a bench trial of inequitable conduct, because the issues for the Court's determination are independent from any construction of the claim terms. The threshold issue for this Court's determination is whether Bard added new matter in submitting Figures 52A and 52B (added for the first time well after the original application was filed)  disclosed in the Second Preliminary Amendment to US Patent Nonprovisional Application 11/368,954. This Court will determine whether or not new Figures 52A and 52B were supported by the original patent specification as filed. *See* 37 C.F.R. 1.121(f). If not, the determinative issue is Bard's intent: whether Bard added this new matter, Figures 52A and 52B, in order to deceive the USPTO. If this Court finds that Figures 52A and 52B are new matter—and that Bard added Figures 52A and 52B in order to deceive the USPTO—then Bard's '302

Patent is rendered *unenforceable*, and no construction of any claim term will be necessary. *See GS Cleantech*, 951 F.3d at 1332.

While courts throughout the country have taken varied approaches to case management in light of the specific issues posed by each case, inequitable conduct is a determination for the bench. *See e.g.*, *Ductmate Indus., Inc. v. Famous Distribution, Inc.*, 2014 WL 4104810, at *6-7 (W.D. Pa. Aug. 19, 2014) (collecting cases); *GS Cleantech*, 951 F.3d at 1331 ("'Inequitable conduct is equitable in nature, with no right to a jury, and the trial court has the obligation to resolve the underlying facts of materiality and intent.'") (quoting *Am. Calcar v. Am. Honda Motor Co.*, 651 F.3d 1318, 1333 (Fed. Cir. 2011)); *Ductmate*, 2014 WL 4104810, at *7 (distinct from other issues in a case, "inequitable conduct raises issues as to what Plaintiff's representatives and their Counsel did before the USPTO").

Finally, the position Bard took during the July 27 hearing (namely that it is entitled to a "jury trial first on the issue of whether that's new matter") (Tr. at. 11), is contrary to the position Bard took in *Bard Peripheral Vascular, Inc. v. Angiodynamics, Inc. v. C.R. Bard, Inc.*, C.A. No. 15-218-JFB-SRF (D. Del 2018) (the "Angio Case"). There, Bard argued that inequitable conduct was an issue for the bench:

> **Bard proposes that AngioDynamics's inequitable conduct, unclean hands, and equitable defenses and counterclaims against Bard** (including equitable estoppel), as well as its inequitable conduct and unclean hands defenses and counterclaims/third-party claims against C. R. Bard, **be tried to the bench**, following the jury trial, in a manner and at a time as the Court may direct. . . **No Delaware court has tried inequitable conduct and unclean hands to the jury in more than 10 years** . . . .

8

*See* Angio Case, ECF 360, ¶ 15 (Joint Proposed Final Pretrial Order) (emphases added). Thus far, Bard offered no basis for its deviation from established Federal Circuit precedent[2]—or Bard's prior argument—here.

Practically, MedComp respectfully proposes that an inequitable conduct trial would proceed before this Court as follows.[3] First, the parties would exchange exhibit and witness lists including both fact and expert witnesses, as well as a joint submission of undisputed facts. Subject to the prior determination of the scope of the short two- to three-day bench trial and any relevant pretrial motions, MedComp currently anticipates it would put on a handful of fact witnesses and one to three expert witnesses. MedComp, bears the burden of proof on Bard's inequitable conduct in its case, and Bard would follow with its defense. MedComp's case-in-chief and Bard's defense usually would include expert testimony to advise the Court regarding the practice and procedures of the USPTO at issue, including what experts in patent prosecution consider as to when and whether a submission constitutes new matter as defined by 37 C.F.R.

---

[2] In the July 27 hearing, Bard claimed Supreme Court authority supported its contention that the threshold issue of whether there was new matter, is protected by the Seventh Amendment. Tr. at 10:19-24 ("there is new matter which would also invalidate our patents, and we have Seventh Amendment right on that. So the Supreme Court has been pretty clear that we would be entitled to our jury trial first on the issue of whether that's new matter before the court could have an equitable trial on the issue of inequitable conduct based on new matter.") MedComp looks forward to Bard's citation of this case authority so that it may respond.

[3] MedComp respectfully submits that the pre-trial hearing transcript from *In re:Method of Processing Ethanol ByProducts and Related Subsystems ('858) Patent Litigation* (S.D. Ind.) may be helpful to this Court. S.D. Ind., Case No. 1:14-cv-08020-RLM-DML, ECF 306 at 24-34 (attached hereto as Ex. B). The Federal Circuit upheld that court's finding of inequitable conduct, holding that "the District Court did not abuse its discretion in reaching its inequitable conduct determination." *GS Cleantech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1332 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 1377, 209 L. Ed. 2d 122 (2021).

1.121(f). MedComp currently estimates that such a trial would take two to three days, making it an expeditious way to resolve a potentially dispositive issue.

Respectfully submitted,

Dated: August 20, 2021  By:  /s/ *Alfred W. Zaher*
Alfred W. Zaher (*pro hac vice*)
Maryellen Madden (*pro hac vice*)
Peter Breslauer (*pro hac vice*)
Stephanie K. Benecchi (*pro hac vice*)
Patrick J. Farley (pro hac vice)
MONTGOMERY McCRACKEN WALKER & RHOADS LLP

Michael Hayes (*pro hac vice*)
HORN WILLIAMSON LLC

J. Mark Gibb
Clinton E. Duke
DENTONS DURHAM JONES PINEGAR, PC

*Attorneys for Defendant/Counterclaimant Medical Components, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 20th day of August, 2021, I filed the foregoing with the Court by CM/ECF which then served all counsel of record.

/s/ *Alfred W. Zaher*