IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| C.R. BARD, INC., a New Jersey corporation, and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation,<br><br>Plaintiffs,<br><br>v.<br><br>MEDICAL COMPONENTS, INC., a Pennsylvania corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT (DKT. 750) AND DENYING MOTION FOR SUMMARY JUDGMENT (DKT. 460) AS MOOT**<br><br>2:12-cv-00032-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br>Magistrate Judge Daphne A. Oberg |

Before the court are Plaintiff C.R. Bard, Inc. and Plaintiff Bard Peripheral Vascular, Inc.'s (Bard's) two Motions for Summary Judgment of Invalidity of Medical Components, Inc.'s (MedComp's) U.S. Patent No. 8,021,324.[1] For the reasons explained below, the court GRANTS the second Motion[2] and DENIES the first Motion[3] as moot.

## FACTS

Bard and MedComp develop, produce, and market various vascular access devices, including subcutaneous access ports. Access ports provide a convenient method of delivering infusions of medicine, blood products, or other fluids without requiring surgical procedures.[4] Power injection machines employing high pressure are sometimes used to deliver fluids through

---

[1] Dkt. 460; Dkt. 750.

[2] Dkt. 750.

[3] Dkt. 460.

[4] *See* Dkt. 585-2 (Bard's Redacted Tutorial Exhibit) at 4.

1

access ports.[5]  Unlike regular access ports that can fracture and cause significant bodily injury if subjected to power injection, special power-injectable ports are designed to withstand high pressures.[6]  Generally, access ports offered by different manufacturers and different models exhibit similar geometries, making it difficult to differentiate between power injectable ports and regular access ports once they have been implanted in the body of a patient.[7]  Access port manufacturers thus seek methods of adding identifiers to their ports to enable identification of power-injectability following implantation.[8]  The various iterations of port identification methods comprise the heart of the patent disputes between Bard and MedComp.

Bard asserts three patents in this case—U.S. Patent Nos. 7,785,302 (the '302 Patent); 7,947,022 (the '022 Patent), and 7,959,615 (the '615 Patent)—relating to the radiopaque identification of subcutaneous access ports.[9]  MedComp's counterclaim asserts U.S. Patent No. 8,021,324 (the '324 Patent).[10]  Like the Bard Patents at issue, the '324 Patent uses radiopaque indicia to identify features of a subcutaneous access port after implantation.[11]

## PROCEDURAL HISTORY

On January 11, 2012, Bard filed the instant action against MedComp, alleging infringement of the '022, '302, and '615 Patents.[12]  On March 14, 2012, MedComp answered

---

[5] *See id.* at 15–18.

[6] *See id.* at 20, 23–24.

[7] *See id.* at 26–27.

[8] *See id.* at 29–33; *see also* Dkt. 579 (Disk with MedComp's Technology Tutorial) at 26–30 (on file with Clerk's Office).

[9] Dkt. 69 (Amended Complaint) ¶¶ 7–10.

[10] *See* Dkt. 640 (Second Amended Answer and Amended Counterclaims) at 27–28.

[11] Dkt. 19-1 (U.S. Patent No. 8,021,324) at 1.

[12] Dkt. 2 ¶¶ 11–20.

and counterclaimed, alleging Bard infringed its '324 Patent.[13] On December 17, 2012, the case was stayed and administratively closed while the patents-in-suit underwent *inter partes* reexamination before the United States Patent and Trademark Office.[14] On October 4, 2019, the stay was lifted.[15] Fact discovery closed on February 8, 2021. The parties completed claim construction briefing on April 2, 2021, and conducted a technology tutorial for the court on April 28, 2021.[16]

Bard filed its first Motion for Summary Judgment on March 5, 2021,[17] and MedComp filed its own Motion for Summary Judgment on the same day.[18] Bard argued the '324 Patent must be invalidated because Bard's PowerPort MRI was prior art.[19] MedComp argued, *inter alia*, that it was entitled to summary judgment on the invalidity of Bard's asserted patents under 35 U.S.C. § 101.[20] On July 22, 2021, this court issued a Memorandum Decision and Order (the Order) partially granting MedComp's Motion for Summary Judgment.[21] The court found that Bard's three asserted patents were invalid under 35 U.S.C. § 101 because the claims at issue were directed solely to non-functional printed matter and contained no additional inventive concept.[22]

---

[13] Dkt. 19 ¶¶ 33–35.

[14] Dkt. 93 (Memorandum Decision and Order Administratively Closing Case).

[15] *See* Dkt. 161 (Order Reopening Case).

[16] *See* Dkt. 539 (Bard's Memorandum in Opposition to MedComp's Motion to Consolidate) at 2–3 (summarizing procedural history).

[17] Dkt. 460.

[18] Dkt. 463.

[19] *See* Dkt. 460 at 17–29.

[20] Dkt. 463 at 10–22.

[21] Dkt. 715-1 (Memorandum Decision and Order).

[22] *See id.* While the court granted MedComp's request for summary judgment on the issue of patent invalidity, it deferred consideration of MedComp's request for summary judgment on Bard's alleged infringement of MedComp's asserted patent.

At the court's invitation, Bard filed a new Motion for Summary Judgment (the Motion) challenging MedComp's '324 Patent based on the framework set forth in the court's Order.[23] The court now turns to Bard's Motion.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[25]  A fact is material if, under the governing substantive law, it could "affect the outcome of the suit."[26] When applying this standard, the court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[27]

## ANALYSIS

The court first summarizes the framework from its earlier Order, in which it found that Bard's three asserted patents were invalid under 35 U.S.C. § 101 because the asserted claims were directed only to abstract ideas.  Next, the court analyzes MedComp's asserted patent using the same framework, first ascertaining the undisputed facts and then applying the law of the case to MedComp's '324 Patent.

---

[23] *See* Dkt. 721 (Docket Text Order); Dkt. 750 (Bard's new Motion for Summary Judgment).

[24] Fed. R. Civ. P. 56(a).

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[26] *Id.*; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material.").

[27] *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

### a. The *AngioDynamics* and *Alice* Frameworks

Under 35 U.S.C. § 101, patentable subject matter includes "any new or useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."[28] The Federal Circuit "has generally found printed matter to fall outside the scope of § 101."[29] "While historically 'printed matter' referred to claim elements that literally encompassed 'printed' material, the doctrine has evolved over time to guard against attempts to monopolize the conveyance of information using any medium."[30] Accordingly, under the printed matter doctrine, printed matter cannot be patented "unless it is functionally related to . . . the structural elements of the claimed invention."[31] In the *AngioDynamics* decision, the Federal Circuit set out a two-step inquiry to determine if a claim limitation is directed solely to printed matter.[32] The Federal Circuit then applied what is known as the *Alice* framework to determine if claimed printed matter was patent eligible.[33]

In its prior Order, the court applied the *AngioDynamics* inquiry and *Alice* framework to the Bard Patents and found they were invalid under § 101. Specifically, the court first found under *AngioDynamics*, Bard's asserted claim limitations were directed solely to printed matter with no additional inventive concept.[34] Next, the court determined the Bard Patents were invalid

---

[28] 35 U.S.C. § 101.

[29] *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1064 (Fed. Cir. 2010).

[30] *C R Bard, Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1381 (Fed. Cir. 2015)

[31] *Id.* (internal citations and quotations omitted).

[32] *Id.* at 1381–82; *see also* Dkt. 715-1 at 25 (summarizing the *AngioDynamics* inquiry).

[33] *AngioDynamics*, 979 F.3d at 1382–84.

[34] *See* Dkt. 715-1 at 25–29 (applying *AngioDynamics*, 979 F.3d at 1381–82).

under the *Alice* framework, which determines whether a patent is invalid for being directed toward a patent ineligible concept, such as an abstract idea.[35]

Under the *AngioDynamics* inquiry, "a claim may be patent ineligible under § 101 on the grounds that it is: (1) directed solely to non-functional printed matter and (2) the claim contains no additional inventive concept."[36] The claims at issue in Bard's '302 and '022 Patents required a radiopaque identifier conveying to a medical practitioner that the implanted port is power injectable, and the claim at issue in the '615 Patent required a structural feature with at least one concave side, also conveying that the implanted port is suitable for power injection.[37] The court found at step one of the inquiry these asserted claims were directed solely to non-functional printed matter: in the case of '302 and '022 Patents, by using radiopaque identifiers to communicate that subcutaneous access ports were suitable for power injection, and in the case of the '615 Patent, by using a concave surface to communicate the same idea.[38] At step two of the *AngioDynamics* inquiry, the court found the Bard Patents contained no additional inventive concept because the focus of each claimed advance was using the radiopaque or concave identifying features in conjunction with a typically-constructed access port to convey the information that the access port is power injectable.[39]

The court then moved to the two-step *Alice* inquiry, under which it determines whether a claim is patent-eligible under 35 U.S.C. § 101 by distinguishing patent-ineligible claims for abstract ideas from patent-eligible applications of abstract ideas.[40] At step one, the court asked

---

[35] *See id.* at 29–40 (applying *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 217–18 (2014)).

[36] Dkt. 715-1 at 25 (citing *AngioDynamics*, 979 F.3d at 1383).

[37] *See* Dkt. 715-1 at 25–26 (discussing the Bard Patents).

[38] Dkt. 715-1 at 25–28.

[39] *Id.* at 28.

[40] *Id.* at 23–25 (discussing patent eligibility under 35 U.S.C. § 101 and citing *Alice*, 573 U.S. at 216–18).

6

whether the claims at issue, in their entirety, were directed to ineligible subject matter.[41] The court found all the asserted claims were directed to using a specific identifier—either a radiopaque identifier or a structural element including at least one concave side—to communicate information to a medical practitioner that the access port in question is power injectable subsequent to implantation.[42] The court further noted the claims were not directed to an improvement in port technology, there was no description in the claim language describing how the radiopaque identifiers or concave side surfaces are generated, and the claims contained no discussion of the X-ray technology used to view the radiopaque identifiers after implantation—in other words, the claims provided no functional improvement to the port itself or the X-ray technology used to view radiopaque identifiers.[43] Thus, because each asserted claim centered only on the use of an identifier to communicate information about the power injectability of the underlying port, the court found the claims were directed to an abstract idea.[44]

At *Alice* step two, the court analyzed the claims to determine whether they contained an inventive concept sufficient to transform the nature of the claim into a patent-eligible application,[45] and found the claims in the '302 and '022 Patents did not contain an inventive concept because the use of a radiopaque identifier to convey information was not inventive.[46] The court noted that MedComp had provided "numerous pieces of evidence supporting its argument that radiopaque identifiers were well-understood, routine, and conventional to those

---

[41] *Id.* at 30.

[42] *Id.* at 31–32.

[43] *Id.* at 31.

[44] *Id.* at 32.

[45] *Id.* (citing *Alice*, 573 U.S. at 217).

[46] *Id.* at 33–37.

skilled in the art of implantable medical devices."[47] The court further found the '615 Patent did not contain an inventive concept because the asserted claim about the required structural feature of one concave side was also routine and conventional in the medical device field.[48]

Having found the claims at issue were directed to the ineligible abstract idea of communicating information and lacked an inventive concept, the court accordingly held the asserted claims of the '302, '022, and '615 Patents were invalid under § 101, and granted MedComp's Motion for Summary Judgment on the Bard Patents' invalidity.[49]

The Order, and its interpretation of *AngioDynamics* and *Alice*, is now law of the case.[50] Accordingly, the court will evaluate the '324 Patent under the same framework.

### b. MedComp's '324 Patent

Bard argues that given the court's Order finding the '302, '022, and '615 Patents invalid under 35 U.S.C. § 101, the '324 Patent must also be found invalid.[51] MedComp does not contest Bard's argument.[52] The court agrees that the '324 Patent is invalid under law of the case.

---

[47] *Id.* at 34.

[48] *Id.* at 37–40.

[49] *Id.* at 40.

[50] *See, e.g.*, *Grigsby v. Barnhart*, 294 F.3d 1215, 1219 (10th Cir. 2002) ("Generally, once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case.") (internal citations and quotation omitted). There are only three "exceptionally narrow" reasons to depart from law of the case, none of which are implicated here: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Id.* n.4 (citing *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1133 (10th Cir. 2001)).

[51] *See* Dkt. 750 at 1–2 (summarizing argument). In asserting this argument, Bard maintains it disagrees with the court's Order and reserves the right to challenge it once it becomes final. *See id.* at 1 n.1.

[52] Dkt. 759 (Opposition) at 1 ("MedComp . . . does not find fault with the Court's Summary Judgment Order. MedComp will accept the consequences of the Court's application of the same . . . analysis with respect to MedComp's asserted '324 Patent claims.").

### i. The Material Facts are Undisputed

In its Motion for Summary Judgment, Bard provides a Statement of Undisputed Material Facts concerning the '324 Patent's independent and dependent claims.[53] MedComp only disputes one of these facts: it correctly notes the title of the '324 Patent is "Venous Access Port Assembly With X-Ray Discernable Indicia," not "Venous Access Port With X-Ray Discernable Indicia," as indicated in Bard's Motion.[54] With no other material facts disputed, the court adopts the rest of the undisputed facts set forth in Bard's Motion.[55]

MedComp, however, does dispute some of Bard's characterizations of the record.[56] The court briefly discusses each disputed characterization, but finds none of these disagreements ultimately material to the Motion.

First, MedComp argues Bard mischaracterizes its Provisional Application disclosure of "a metal disk in the bottom of plastic port" as an invalidating prior invention and maintains that this does not constitute prior art under pre-AIA 35 U.S.C. § 102, and further that this is "an attempt by Bard to perpetuate the misconception that the conception date of the inventions claimed in the '324 Patent is later than the date of Bard's Provisional Application."[57] Second, MedComp argues Bard mischaracterizes the Provisional Application disclosure as evidence of what is routine and conventional, and argues "the mere fact that a patent description teaches or suggests a claimed element does not make the element 'routine' or 'conventional' for purposes

---

[53] Dkt. 750 at 3–5.

[54] *Compare id.* at 3 *with* Dkt. 759 at 1.

[55] *See* Dkt. 750 at 3–5.

[56] Dkt. 759 at 1–3.

[57] *See* Dkt. 759 at 1–2. MedComp also notes that the Provisional Application in question here is the one Bard allegedly deceived the USPTO about to "obtain an illegitimate priority date for its asserted patents."

9

of the *Alice* patent eligibility test."[58] But MedComp does not dispute there is other prior art that incorporates radiopaque markers in the object to be identified. In fact, MedComp identified this prior art at some length in its own Motion for Summary Judgment.[59] Whether Bard's Provisional Application is considered prior art or not is irrelevant for the purposes of determining the instant Motion given the body of prior art MedComp has already identified.

Third, MedComp notes that Bard asserts similarity in embodiments of the access port described in the '324 Patent, and "disputes Bard's inference that this somehow establishes non-inventiveness."[60] MedComp further argues "Bard's conclusion that 'MedComp's claims do not provide for any functional improvement in the X-ray technology' is entirely divorced from that comparison."[61] Bard notes in its Reply, however, the conclusion is not divorced from the comparison because it did list an example of how MedComp's claims do not provide improvement.[62] Regardless of the level of similarity between the ports, the central point is that the embodiment of the access port itself is not inventive, as the court discussed in its prior Order discussing the Bard Patents.[63] Therefore, this characterization is also not relevant to the ultimate disposition of the Motion.

Fourth and finally, MedComp disputes that the '324 Patent has only two embodiments: cut-outs and stamped discrete elements bearing the letters "CT."[64] Rather, MedComp asserts that each embodiment represents "a genus of two species," "one where the indicia is fully

---

[58] *Id.* (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79–80 (2012)).

[59] *See* Dkt. 463 at 16–22.

[60] Dkt. 759 at 2.

[61] *Id.*

[62] Dkt. 762 (Reply) at 4 (citing Dkt. 750 at 10).

[63] *See* Dkt. 715-1 at 30–40.

[64] Dkt. 759 at 2.

embedded in the port body such that it is not visible from below, and another where it is only partially embedded such that it is visible from below."[65] MedComp further asserts the indicia can be any character, including alphabetical letters and numbers, and argues that this "raises an important point of distinction between the Bard claims and the claims of the '324 Patent for the Court's consideration."[66] Bard rejoins that MedComp's claims potentially incorporating "a larger set of characters including letters and/or numbers" does not "weigh in favor of patentability . . . under § 101."[67] Indeed, no matter which characters are used, the claimed innovation of the '324 Patent—like the Bard Patents—is using radiopaque indicia to communicate information about the access port to medical professionals. The court agrees with Bard that the precise characters used to communicate that information are immaterial for purposes of evaluating the instant Motion.

Having found none of the disputes concerning Bard's characterizations of the facts are material to the Summary Judgment Motion, the court will apply the law of the case to the undisputed facts surrounding MedComp's '324 Patent.

### ii. The '324 Patent is Invalid Under the Law of the Case

The '324 Patent's asserted independent claim 1 consists of:

> An implantable venous access port assembly, comprising: a needle-penetrable septum; and a housing securing the needle-penetrable septum, the housing comprising a housing base having a bottom wall and X-ray discernable indicia comprising one or more characters that visually indicate, under X-ray examination, a pressure property of the port assembly.[68]

Similarly, independent claim 19 consists of:

---

[65] *Id.*

[66] *Id.* at 3.

[67] Dkt. 762 at 5.

[68] Dkt. 19-1 at 11 (Claim 1).

11

> An implantable venous access port assembly, comprising: a housing comprising a housing base comprising a bottom wall and radiopaque indicia embedded in the bottom wall of the housing base, the radiopaque indicia comprising one or more characters indicating a pressure property of the port assembly under X-ray examination; a needle-penetrable septum; and a cap securing the needle-penetrable septum to the housing.[69]

Like the three Bard Patents, the asserted claims of the '324 Patent consist of an access port with radiopaque indicia to indicate a pressure property of the port. The issue is whether these asserted claims are patent ineligible under § 101 and the printed matter doctrine.

First, to determine whether the claims may be patent ineligible, the court turns to the *AngioDynamics* inquiry, under which "a claim may be patent ineligible under § 101 on the grounds that it is (1) directed solely to non-functional printed matter and (2) the claim contains no additional inventive concept."[70]

Under the first step of the *AngioDynamics* inquiry, the '324 Patent's independent claims are directed solely to non-functional printed matter. The '324 Patent's independent claims describe venous access port assemblies and the radiopaque identification feature directed to conveying information about the port. Though the radiopaque indicia are embedded into the bottom wall of the housing base, rather than included on the housing base as in Bard's '302 and '022 Patents, the '324 Patent's sole function—like the Bard Patents—is to convey the information that the port is power-injectable. The '324 Patent's Summary of the Invention specifically highlights the X-ray identifiable feature: "The invention is the incorporation of X-ray discernible indicia onto a venous access port that is discernible under X-ray examination to provide information concerning the nature or key attribute of the venous access port, so that the

---

[69] *Id.* at 12 (Claim 19).

[70] *See* Dkt. 715-1 at 25 (citing *AngioDynamics*, 979 F.3d at 1383).

practitioner . . . can determine that nature or key attribute under X-ray examination."[71] Specifically, using the letters CT "would be understood in medical practice to indicate the port is suitable for the high pressure injection."[72] Because the claimed invention is the particular identifying features of the radiopaque indicia, the claims in the '324 Patent are directed solely to non-functional printed matter.

Under the second step of the *AngioDynamics* inquiry, the '324 Patent contains no additional inventive concept. Like the invalidated Bard Patents, the '324 Patent recites the assembly of a typical venous access port with the additional feature of the printed matter conveying the information that the port is power-injectable.[73] As this court stated in its prior Order concerning the Bard Patents, "[b]eyond the printed matter, there are no other elements that could be considered 'inventive.'"[74] Moreover, as discussed above, the fact that the '324 Patent may encompass a larger range of letters and numbers as part of its radiopaque indicia, or embed those characters differently on the port, does not change this result. If the focus of the claimed advance is on making the port identifiable via X-ray technology to medical practitioners—in other words, to communicate information—it has no additional inventive concept, regardless of the particular characters used. Therefore, under the *AngioDynamics* framework, the '324 Patent is directed solely to printed matter.

Having determined the claims are directed solely to printed matter under the *AngioDynamics* inquiry, the court moves on to the two-step *Alice* framework to determine if the claims comprise only patent-ineligible subject matter.

---

[71] Dkt. 19-1 at 10.

[72] *Id.*

[73] *See id.* at 1 (Abstract), 10 (Summary of the Invention).

[74] Dkt. 715-1 at 28.

At *Alice* step one, the court asks whether the claims at issue, in their entirety, are directed to ineligible subject matter.[75] The independent claims asserted are directed to the access port, specifically the "X-ray discernable indicia embedded in the bottom wall . . . comprising one or more characters that visually indicate . . . a pressure property of the port assembly."[76] In other words, the claims are directed to communicating information about the characteristics of the access ports. Because the radiopaque identifiers provide no functional improvement to the port itself or to the X-ray technology used to view the identifiers, and the rest of the claimed invention pertains to a typical access port, the claims are directed to an abstract idea. This is patent ineligible subject matter.

At *Alice* step two, the court analyzes the claims to determine whether they include an inventive concept sufficient to make them a patent-eligible application.[77] As discussed in the prior Order, "the addition of a non-functional radiopaque identifier to a known product is not an inventive concept."[78] Here, the '324 Patent's specification describes the invention as the "incorporation of X-ray discernable indicia . . . to provide information concerning the nature or key attribute of the venous access port."[79] As discussed, the two embodiments therein are described as a "genus of two species – one where the indicia is fully embedded in the port body such that it is not visible from below and another where it is only partially embedded such that it is visible from below,"[80] which can include any character.[81] While the parties dispute the extent

---

[75] *See* Dkt. 715-1 at 29 (citing *Alice*, 573 U.S. at 217–18).

[76] Dkt. 19-1 at 11 (Claim 1); *see also id.* at 12 (Claim 19) ("radiopaque indicia embedded in the bottom wall . . . comprising one or more characters indicating a pressure property of the port.").

[77] Dkt. 715-1 at 29 (citing *Alice*, 573 U.S. at 217–18).

[78] Dkt. 715-1 at 37.

[79] Dkt. 19-1 at 10 (Summary of the Invention).

[80] Dkt. 759 at 2.

[81] *See id.*

14

to which these particular embodiments differentiate the claims in the '324 Patent from the Bard Patents, the claimed inventive concept, at bottom, is an access port with radiopaque indicia used for the purpose of informing medical practitioners of the pressure capacity of the port. As with the Bard Patents, there is no additional inventive concept because radiopaque identifiers are not new within the medical device field.[82] Because the radiopaque identifiers only communicate an abstract idea, the claims in the '324 Patent do not contain an inventive concept sufficient to render them a patent-eligible application.

In summary, using the prior Order's framework, now law of the case, the asserted claims in Patent '324 are invalid under 35 U.S.C. § 101 because the use of radiopaque identifiers on a typical access port does not constitute an inventive concept. Therefore, Bard's Motion for Summary Judgment on MedComp's asserted Patent is GRANTED.[83]

## CONCLUSION

For the foregoing reasons, Bard's Motion for Summary Judgment of Invalidity of the '324 Patent is GRANTED.[84] Additionally, Bard's first Motion for Summary Judgment is DENIED as moot.[85]

SO ORDERED this 3rd day of November, 2021.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[82] *See* Dkt. 715-1 at 33–37 (explaining that the use of radiopaque identifiers is not inventive).

[83] Dkt. 750.

[84] Dkt. 750.

[85] Dkt. 460.