IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| C.R. BARD, INC., a New Jersey corporation, and BARD PERIPHERAL VASCULAR, INC., an Arizona corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>MEDICAL COMPONENTS, INC., a Pennsylvania corporation,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER CERTIFYING CLAIMS UNDER RULE 54(b)**<br><br>2:12-cv-00032-RJS-DAO<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Before the court are the parties' respective case management briefs concerning the most efficient way to proceed in this aged case.[1] Plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, Bard) contend the most efficient route is to certify for immediate appeal under Federal Rule of Civil Procedure 54(b) the court's recent Summary Judgment Orders,[2] which found all asserted patents in this case invalid.[3] Defendant Medical Components, Inc. (MedComp) argues conducting a bench trial on the issue of Bard's alleged inequitable conduct prior to appeal would be more efficient because the bench trial will resolve a potentially dispositive issue, and resolving the inequitable conduct issue first would allow all issues in the case to be appealed to the Federal Circuit together.[4] For the reasons explained below, the court

---

[1] Dkt. 743 (Bard's Opening Case Management Brief); Dkt. 744 (MedComp's Opening Case Management Brief).

[2] *See* Bard's Case Management Brief at 3.

[3] Dkt. 715-1 (Memorandum Decision and Order Partially Granting MedComp's Motion for Summary Judgment) (hereinafter Summary Judgment Order I); Dkt. 765 (Memorandum Decision and Order Granting Motion for Summary Judgment) (hereinafter Summary Judgment Order II).

[4] *See* MedComp's Case Management Brief at 1–2.

finds Bard's proposed course preferable, and certifies its Summary Judgment Orders for immediate appeal under Rule 54(b).

## BACKGROUND AND PROCEDURAL HISTORY

The court will not recite at length the facts underlying this longstanding patent litigation. Briefly, Bard asserts three patents: U.S. Patent Nos. 7,785,302 (the '302 Patent); 7,947,022 (the '022 Patent), and 7,959,615 (the '615 Patent).[5]  MedComp's counterclaim asserts U.S. Patent No. 8,021,324 (the '324 Patent).[6]  The patents all relate to the radiopaque identification of subcutaneous access ports.[7]

On January 11, 2012, Bard filed the instant action against MedComp, alleging infringement of the '022, '302, and '615 Patents.[8]  MedComp counterclaimed, alleging Bard infringed its '324 Patent.[9]  On December 17, 2012, the case was stayed and administratively closed while the patents-in-suit underwent *inter partes* reexamination before the United States Patent and Trademark Office.[10]  On October 4, 2019, the stay was lifted.[11]  Since that time, the case has progressed as follows: (1) fact discovery commenced on March 30, 2020 and closed on February 8, 2021; (2) the parties completed claim construction briefing on April 2, 2021; and (3) the parties conducted a technology tutorial for the court on April 28, 2021.[12]

---

[5] Dkt. 69 (Amended Complaint) ¶¶ 7–10.

[6] Dkt. 640 (Second Amended Answer and Amended Counterclaims) at 27–28.

[7] *See* Dkt. 2-1 (U.S. Patent No. 7,785,302); 2-2 (U.S. Patent No. 7,947,022); Dkt. 2-3 (U.S. Patent No. 7, 959,615); Dkt. 19-1 (U.S. Patent No. 8,021,324).

[8] Dkt. 2 (Complaint) ¶¶ 11–20.

[9] Dkt. 19 (Answer and Counterclaim) ¶¶ 33–35.

[10] *See* Dkt. 93 (Memorandum Decision and Order Administratively Closing Case).

[11] *See* Dkt. 161 (Order Reopening Case).

[12] *See* Dkt. 539 (Bard's Memorandum in Opposition to MedComp's Motion to Consolidate Cases) at 2–3 (summarizing procedural history).

On March 5, 2021, the parties filed Cross-Motions for Summary Judgment.[13]  Bard argued in its Motion the '324 Patent must be invalidated because its PowerPort MRI was prior art.[14]  MedComp argued in its Motion, *inter alia*, that it was entitled to summary judgment on the invalidity of Bard's asserted patents under the printed matter doctrine.[15]

On July 22, 2021, this court issued a Memorandum Decision and Order (Summary Judgment Order I) partially granting MedComp's Motion for Summary Judgment, specifically finding Bard's three asserted patents were invalid under the printed matter doctrine.[16]  The court declined to consider MedComp's request for summary judgment on the grounds Bard had infringed MedComp's patent.[17]

On July 25, 2021, Bard moved to certify Summary Judgment Order I under Rule 54(b), arguing that immediate appeal of the patents' invalidity would be efficient given that Bard is asserting the same patents in concurrent litigation pending in other districts.[18]  The court denied the 54(b) Motion without prejudice[19] in light of the discussion at a July 27, 2021 hearing, in which Bard was invited to move for summary judgment against MedComp's '324 Patent under the law of the case adopted in Summary Judgment Order I.[20]  Bard took up that invitation, filing a second Motion for Summary Judgment on August 27, 2021.[21]  The court granted that motion

---

[13] Dkt. 460 (Bard's First Motion for Summary Judgment); Dkt. 463 (MedComp's Motion for Summary Judgment).

[14] *See* Bard's First Motion for Summary Judgment at 17–29.

[15] See MedComp's Motion for Summary Judgment at 10–22.

[16] *See* Summary Judgment Order I.

[17] *See id.* at 1 n.1.

[18] Dkt. 718 (Bard's Motion to Certify Under Rule 54(b)) at 5–8.

[19] Dkt. 721 (Docket Text Order).

[20] *See* Dkt. 727 (Hearing Transcript) at 3:18–5:14.

[21] Dkt. 750 (Bard's Second Motion for Summary Judgment).

on November 3, 2021, finding the '324 Patent invalid in its Memorandum Decision and Order Granting Bard's Motion for Summary Judgment (Summary Judgment Order II).[22]

In the July 27 hearing, the parties were directed to submit case management briefs proposing the most efficient way to proceed.[23]  Those briefs have now been filed.  Bard contends that the court's Orders finding all of the asserted patents in this case invalid should be certified under Rule 54(b) for immediate appeal.[24]  MedComp argues that the court should first hold a bench trial on its inequitable conduct claim, enabling appeal of all the issues in the case together after that trial is completed.[25]

Having considered these arguments, for the reasons explained below, the court concludes that the most efficient course will be to immediately certify for appeal under Rule 54(b) its Summary Judgment Orders finding invalidity, and to stay the case while the appeal is pending.

## LEGAL STANDARD

Under 28 U.S.C. § 1295, the United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over "an appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any act of Congress relating to patents."[26]  Because 28 U.S.C. § 1291 also limits the jurisdiction of the courts of appeals (other than the United States Court of Appeals for the Federal Circuit) to "final decisions of the district courts,"[27] the Federal Circuit applies principles of finality promulgated under § 1291 to determine whether a judgment

---

[22] Dkt. 765 (Summary Judgment Order II).

[23] See Dkt. 721 (Docket Text Order).

[24] Bard's Case Management Brief at 2–3.

[25] MedComp's Case Management Brief at 1.

[26] 28 U.S.C. § 1295(a)(1).

[27] 28 U.S.C. § 1291.

is final under § 1295.[28]   A "final" decision is one that "ends litigation on the merits and leaves nothing for the court to do but execute the judgment."[29]

"[F]or a district court judgment to be appealable to [the Federal Circuit] under 28 U.S.C. § 1295(a)(1), the judgement must resolve all claims and counterclaims or make an express determination under Rule 54(b) . . . that there is no just reason for delay."[30]   Rule 54(b) provides, in relevant part, that "[w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, cross-claim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay."[31]

"Rule 54(b) was implemented to specifically 'avoid the possible injustice of delay[ing] judgment on a distinctly separate claim [pending] adjudication of the entire case.'"[32]   In deciding whether to certify a claim under Rule 54(b), the district court "act[s] as a dispatcher," weighing the "historic" policy of preventing piecemeal appeals against the "equities involved."[33]   "It is left to the sound discretion of the district court to determine the appropriate time when each final

---

[28] *See, e.g.*, *Alfred E. Mann Foundation for Scientific Research v. Cochlear Corp.*, 841 F.3d 1334, 1347 (Fed. Cir. 2016); *W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Research Assocs., Inc.*, 975 F.2d 858, 862 n.3 (Fed. Cir. 1992).

[29] *Gelboim v. Bank of America Corp.*, 574 U.S. 405, 409 (2015) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)); *see also W.L. Gore*, 975 F.2d at 863–64 (Fed. Cir. 1992) (holding district court's order finding patent invalid was final, appealable decision under § 1295).

[30] *Synchronoss Technologies, Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1365 (Fed. Cir. 2021).

[31] Fed. R. Civ. P. 54(b); *see also, e.g.*, *Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.*, 476 F.3d 1329, 1331 (Fed. Cir. 2007) (cautioning that parties may only appeal to the Federal Circuit when a judgment is final or with a Rule 54(b) certification).

[32] *Alfred E. Mann Foundation*, 841 F.3d at 1347 (citing *Gelboim*, 574 U.S. at 409); *see also W.L. Gore*, 975 F.2d at 861 ("Rule 54(b) acknowledges the policy that in multiple claim actions 'some final decisions, on less than all of the claims, should be appealable without waiting for a final decision on all of the claims.'") (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 432 (1956)).

[33] *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 8 (1980) (citing *Sears*, 351 U.S. at 435, 438).

decision in a multiple claims action is ready for appeal."[34]  Rule 54(b) certifications should not

"be granted routinely."[35]  Accordingly, "[t]here are three prerequisites for invoking Rule 54(b):

(1) multiple claims for relief or multiple parties must be involved; (2) at least one claim or the

rights and liabilities of at least one party must be finally decided; and (3) the district court must

find that there is no just reason for delaying an appeal."[36]  The court will consider each

prerequisite in turn.

## ANALYSIS

### I.       The Summary Judgment Orders are Certified Under Rule 54(b)

Having found MedComp's '324 Patent invalid,[37] and having previously found Bard's

'302, '022, and '615 Patents invalid,[38] the court has disposed of all claims relating to the validity

of the asserted patents, leaving only MedComp's inequitable conduct claim.  Rule 54(b)

certification of the invalidity rulings is warranted because: (1) this case involves multiple claims

and parties, (2) the summary judgment orders finding invalidity represent final decisions, and (3)

there is no just reason for delaying appeal.[39]

---

[34] *Id.*

[35] *Id.* at 10.

[36] *Alfred E. Mann Foundation*, 841 F.3d at 1347 (citing 10 Charles Alan Wright et al., Federal Practice and Procedure § 2656 (3d ed. 2016)).

[37] Summary Judgment Order II.

[38] Summary Judgment Order I.

[39] While the court will discuss all three necessary prerequisites for Rule 54(b) certification, it bears noting that the parties' case management briefing does not dispute the first and second prerequisites.  Bard writes in its Opening Case Management Brief that "[t]here is no dispute that the Court's invalidity Summary Judgment Order disposed of/mooted all of Bard's claims against MedComp, leaving nothing left to do but to enter judgment on those claims." Dkt. 743 at 1.  MedComp does not contest this.  *See* Dkt. 744; Dkt. 758 (MedComp's Responsive Case Management Brief).  The parties' Rule 54(b) arguments and counterarguments largely focus on the third prerequisite—that is, whether there is "no just reason for delaying appeal."  The court assumes therefore the parties agree that the first and second prerequisites for Rule 54(b) certification are met in this case and will focus its analysis on the third prerequisite.

6

### a. This Lawsuit Involves Multiple Claims

For Rule 54(b) certification to be appropriate, a case must involve multiple claims for relief or multiple parties.[40]  A claim or counterclaim may be viewed as "a separable unit" suitable for certification under the rule.[41]  The instant lawsuit involves multiple claims and counterclaims, each concerning the various patents at issue, and the parties seek relief under different theories involving distinct facts.[42]  Specifically, Bard brings claims for infringement of the '302, '022, and '615 Patents.[43]  MedComp brings counterclaims alleging the invalidity of the Bard Patents, infringement of the '324 Patent, and inequitable conduct.[44]  The parties each seek damages based on the alleged patent infringement and attorneys' fees and costs.[45]  Therefore, the first element for Rule 54(b) certification is satisfied.

### b. The Summary Judgment Orders Represent a Final Decision

For Rule 54(b) certification to be appropriate, the decision resolving the claim or claims at issue must be final.[46]  Additionally, "[c]ourts analyzing whether Rule 54(b) applies must focus on both the finality of the judgment and the separateness of the claims for relief."[47]

---

[40] *Alfred E. Mann Foundation*, 841 F.3d at 1347.

[41] 10 Charles Alan Wright et al., Federal Practice and Procedure § 2657 (4th ed.).

[42] *See Sears*, 351 U.S. at 436, 437, n.9 (discussing different theories of relief in multiple claims in the context of affirming a district court's Rule 54(b) certification).

[43] Dkt. 69 (Amended Complaint).

[44] Dkt. 640 (Second Amended Answer to Amended Complaint).

[45] *See* Amended Complaint at 12–13; Second Amended Answer at 50–51.

[46] *Alfred E. Mann Foundation*, 841 F.3d at 1347.

[47] *W. L. Gore*, 975 F.2d at 861–62 (citing *Sears*, 351 U.S. at 436).

Finality is a "statutory mandate and not a matter of discretion."[48]  A district court may only certify judgments that are final under § 1291.[49]  For purposes of Rule 54(b), an order is final if it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."[50]  Here, the Summary Judgment Orders finding the Bard Patents and the '324 Patent invalid under 35 U.S.C. § 101 represented final judgments on Bard's claims for infringement and MedComp's counterclaim for infringement because a finding that a patent is invalid represents a final decision in a patent enforcement action under § 1295.[51]  Accordingly, the claims to be certified under Rule 54(b) are final.

In addition, a claim certified under Rule 54(b) must be separate from others in the same action.[52]  Determining whether a claim is sufficiently separate falls within the district court's discretion and turns on factors such as: (1) "whether the claims under review were separable from the others remaining to be adjudicated" and (2) "whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals."[53]

Here, the claims are sufficiently separable from the remaining claims in the case.  The Summary Judgment Orders left intact MedComp's claim alleging Bard engaged in inequitable conduct.[54]  This claim is sufficiently separate and distinct from the Summary Judgment Orders,

---

[48] *W.L. Gore*, 975 F.2d at 862 (citing *Sears*, 351 U.S. at 437) (applying § 1291 finality analysis to Federal Circuit jurisdiction under § 1295).

[49] *Id.*

[50] *Curtiss-Wright Corp.*, 446 U.S. at 7 (citing *Sears*, 351 U.S. at 436).

[51] *W.L. Gore*, 975 F.2d at 864 ("Because the infringement claim and several dipositive defenses were ruled upon [by the decision that the patent-in-suit was invalid] the district court's judgment was final.").

[52] *Id.* at 861–62.

[53] *W.L. Gore*, 975 F.2d at 862 (citing *Curtiss-Wright Corp.*, 446 U.S. at 8).

[54] *See* Dkt. 727 (July 27, 2021 Hearing Transcript) at 9:2–11:19 (discussing the outstanding inequitable conduct claim).

as it concerns Bard's conduct before the PTO and relies on a distinct set of facts and legal arguments.[55]  Were there separate appeals of the Summary Judgment Orders and the inequitable conduct claim, the Federal Circuit would not need to decide the same issues more than once, as the appeal based on the '324 and Bard Patents' invalidity takes up the patents' relationship to the printed matter doctrine, unlike a hypothetical future appeal of the inequitable conduct claim, which concerns Bard's conduct before the PTO.  These inquiries turn on different factual questions, legal questions, and would provide for separate recovery.

The Summary Judgment Orders finding invalidity of the patents represent final decisions that are sufficiently separable from the remaining claim in the case, meeting the second prerequisite for Rule 54(b) certification.

### c.  There is No Just Reason for Delaying Appeal

A district court must make a finding there is "no just reason for delay" and "explain why judicial economy supports its . . . determination" in certifying a claim for immediate appeal under Rule 54(b).[56]  In this evaluation, "a district court must take into account judicial administrative interests as well as the equities involved."[57]  Both interests—intertwined in this case—are served by permitting immediate appeal of the Summary Judgment Orders finding the patents are invalid.

Bard argues there is no just reason to delay appeal because immediate appeal of the patents' invalidity would allow resolution of the "tension" between the Summary Judgment Orders and Federal Circuit case law, and conserve judicial resources by obtaining the Federal

---

[55] *See* Second Amended Answer at 30–50 (detailing factual allegations concerning Bard's alleged inequitable conduct that are distinct from the facts surrounding the specifications of the patents-in-suit for purposes of the infringement claims and counterclaims).

[56] *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1336 (Fed. Cir. 2017).

[57] *Curtiss-Wright*, 446 U.S. at 8.

Circuit's guidance on the validity of the Bard Patents in this and other cases.[58]  MedComp responds that Rule 54(b) certification prior to a bench trial on inequitable conduct is inefficient and will lead to piecemeal appeals.[59]  The court agrees with Bard.

As an initial matter, the validity of the asserted patents is at the heart of this case.  Having found that none of the asserted patents in this case are valid, there is nothing left to decide on the merits of Bard's infringement claims, MedComp's infringement counterclaim, nor any of MedComp's defenses to infringement.  Waiting for conclusion of a bench trial on the inequitable conduct issue would cause significant delay in resolving an issue central to most of the claims in this case.  That delay will also have ripple effects considering pending litigation in other districts and the need to clarify an important doctrinal question.

And Rule 54(b) certification will also give the Federal Circuit an opportunity to further address the application of its patent eligibility case law as it relates to 35 U.S.C. § 101 and the printed matter doctrine.[60]  As the court acknowledged in a hearing following Summary Judgment Order I, the finding that the Bard Patents are invalid is in "some tension" with how Judge Howard Nielsen interpreted the Federal Circuit's recent holding in another case Bard is litigating in this district.[61]  As this doctrine affects a number of patents, and the law in this area has continued to evolve,[62]  immediate appeal would enable litigants and courts to more quickly receive guidance from controlling authority that will assist with resolving disputes.

---

[58] Bard's Opening Case Management Brief at 3–4.

[59] MedComp's Opening Case Management Brief at 1–2.

[60] Bard's Opening Case Management Brief at 3–4 ("There is much uncertainty here that requires appellate resolution.").

[61] Dkt. 727 (July 27, 2021 Hearing Transcript) at 15:13; *see C.R. Bard, Inc. v. Medical Components, Inc.*, No. 2:17-CV-00754, 2020 WL 6902367, at *20–21 (D. Utah Nov. 24, 2020) (finding Bard's asserted patents valid under the printed matter doctrine).

[62] *See, e.g.*, *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 217–18, 221 (2014) (refining two-step test for patent eligibility when a patent concerns abstract ideas); *C R Bard, Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372,

Further, Rule 54(b) certification will avoid duplicative and potentially conflicting judgments in pending litigation in other districts.[63]  Bard has asserted the same patents against two other companies.[64]  Typically, this court's invalidity ruling would be issue preclusive in these cases,[65] but issue preclusion will not apply until the Summary Judgment Order becomes final.[66]  Absent Rule 54(b) certification, the parties to the pending cases may have to relitigate the issue of the Bard Patents' validity, creating the possibility of conflicting judgments and additional appeals.

MedComp's primary argument against Rule 54(b) certification is that holding a bench trial on the issue of inequitable conduct before any appeal would allow all issues in this case to be appealed "in a single package," thereby preventing piecemeal appeals.[67]  MedComp also asserts that "[a]n inequitable conduct bench trial is short and efficient and will not result in unreasonable delay."[68]  MedComp further argues that if the '302 Patent is held unenforceable on the basis of inequitable conduct, "the continuations and continuations-in-part of the '302 Patent here and in the 2017 Litigation, will be rendered unenforceable in accordance with the doctrine of infectious unenforceability."[69]  For that reason, MedComp asserts, "both invalidity and

---

1381–82 (Fed. Cir. 2015) (using two-step inquiry to determine whether a claimed invention is directed toward printed matter).

[63] Bard's Opening Case Management Brief at 4.

[64] *See C.R. Bard, Inc. v. Smiths Medical ASD, Inc.*, No. 1:20-cv-01543-CFC (D. Del.); *C.R. Bard, Inc. v. AngioDynamics, Inc.*, No. 1:20-CV-01544-CFC (D. Del.).

[65] *See, e.g., Blonder-Tongue Labs, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 334 (1971).

[66] *See, e.g., Vardon Golf Co. v. Karsten Mfg. Corp.*, 294 F.3d 1330, 1334 (Fed. Cir. 2002) (a "partial summary judgment was not an appealable final judgment" when it was not certified as "final under Rule 54(b)").

[67] MedComp's Responsive Case Management Brief (Dkt. 758) at 5.

[68] MedComp's Case Management Brief at 1.

[69] *Id.* at 3.  The doctrine of infectious unenforceability applies when a patent rendered unenforceable by inequitable conduct causes other related patents in the same technology family to also be rendered unenforceable.  *See id.* at 4 (citing *Therasense v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288–89 (Fed. Cir. 2011)).

inequitable conduct are potentially dispositive issues . . . [which] would benefit from a unified appeal."[70]  Bard counters that holding a bench trial first would require claim construction, causing delay and violating Bard's Seventh Amendment right to have factual questions decided first by a jury.[71]  Bard additionally disputes that finding the '302 Patent unenforceable would lead to others in its line being affected by the doctrine of infectious unenforceability.[72]

MedComp is correct that the inequitable conduct claim could provide an independent reason the Federal Circuit affirms the Bard Patents' invalidity.  However, the Federal Circuit will have to consider the invalidity issues decided in Summary Judgment Order I and II in any of the following scenarios: (1) the Federal Circuit does not affirm a hypothetical finding of inequitable conduct following a bench trial, (2) a bench trial finds no inequitable conduct, or (3) either this court or the Federal Circuit finds that the doctrine of infectious unenforceability does not apply to the '022 and '615 Patents.  Regardless of the outcome of the inequitable conduct bench trial, these possible scenarios suggest the Federal Circuit will likely take up the invalidity issue and, as previously discussed, the Federal Circuit's guidance on the invalidity issue is strongly desirable not just in this case but in other pending litigation.[73]  Therefore, both the equities and judicial efficiencies counsel finding "no just reason for delay."

---

[70] MedComp's Responsive Case Management Brief at 5.

[71] Bard's Opening Case Management Brief at 6–13.

[72] Bard's Responsive Case Management Brief at 11–13.

[73] Similarly, MedComp is also correct that a holding the '302 Patent is unenforceable would have ripple effects across other litigation in which Bard asserts the '302 Patent (though again, the parties dispute whether a finding the '302 Patent is unenforceable would cause other related Bard patents to be found unenforceable through the doctrine of infectious unenforceability).  Regardless of the extent of this hypothetical unenforceability, this court's Orders finding all the asserted patents unenforceable under § 101 will certainly have ripple effects across any litigation asserting similar patents, and therefore, receiving the Federal Circuit's guidance on the validity of the patents-in-suit is critical.

More practically, even assuming *arguendo* that the court need not construe patent claims prior to a bench trial on inequitable conduct, and that the trial could be completed in only two to three days, the issue likely could not be resolved before next summer. Both the court's calendar and the ongoing pandemic would adversely impact the time to resolution. The court has confirmed first-place jury trial settings for cases in November, December, and January. The latter two are multiweek trials. This is in addition to the court's other work, including numerous fully briefed motions already set for hearing or awaiting a hearing date. Given its current docket, it is likely the court would need at least a couple months to provide its findings and conclusions even after a not-yet-scheduled bench trial could be completed.[74] And the concerning state of the pandemic in the District of Utah continues to present significant health risks (especially with evidentiary hearings) and impair the court's efficiency in many ways. Under these circumstances, withholding a Rule 54(b) certification likely would result in a ten-to-twelve-month delay in resolving patent validity issues important in several pending cases in multiple district courts. In light of these judicial administrative interests, certifying the Summary Judgment Orders for immediate appeal is the more efficient course.[75]

Thus, having considered the equities involved as well as the judicial administrative interests, the court finds there is "no just reason for delay" and that Rule 54(b) certification of the Summary Judgment Orders is appropriate.[76]

---

[74] As Bard notes, expert discovery and pre- and post-trial motion practice could also take significant time, further delaying appeal. *See* Bard's Opening Case Management Brief at 9.

[75] *See* Dkt. 743-1 (Exhibit A to Bard's Opening Case Management Brief) (demonstrating that the median time from docketing date to decision in Federal Circuit cases decided on the merits is about thirteen months).

[76] Having certified the patent invalidity issue under Rule 54(b), the court does not reach the issue of whether holding the inequitable conduct bench trial prior to a jury trial on the infringement claims violates Bard's Seventh Amendment rights, nor does it decide whether claim construction would be necessary prior to an inequitable conduct trial.

## II.       The Case is Stayed Pending Appeal

Having certified the Summary Judgment Orders for immediate appeal under Rule 54(b), the proceedings in this action are stayed, and the case is administratively closed while the appeal is pending.[77]  The parties are directed to submit status reports to the court every six (6) months concerning the progress of the appeal.

Finally, all currently-pending motions in the case are DENIED without prejudice.  Should the case be remanded following consideration by the Federal Circuit, the parties may refile any motions remaining relevant to the litigation.

## CONCLUSION

For the foregoing reasons, the court's prior summary judgment orders[78] in this case are certified for appeal under Rule 54(b), the case is STAYED and ADMINISTRATIVELY CLOSED pending appeal, and all pending motions are DENIED without prejudice.

SO ORDERED this 4th day of November, 2021.

BY THE COURT:

_____

ROBERT J. SHELBY
United States Chief District Judge

---

[77] *See Landis v. N. Am.* Co., 299 U.S. 248, 254 (1936) (the district court has the power to stay proceedings pending before it as part of its inherent power to control its docket); *accord Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997).  The court recognizes MedComp's argument that a stay would be inefficient, *see* MedComp's Responsive Case Management Brief at 5, but notes the argument is the same as MedComp's opposition to Rule 54(b), namely, that waiting to try all issues in this case in one appeal would be most efficient. Having decided to certify the Summary Judgment Orders for immediate appeal, the court has determined staying the case will be most efficient to avoid the possibility of redoing work following a ruling from the Federal Circuit.

[78] Dkt. 715-1; Dkt. 765.