UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MEDICAL COMPONENTS, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MEDCOMP'S MOTION FOR ADDITIONAL JURISDICTIONAL DISCOVERY (DOC. NO. 834)**<br><br>Case No. 2:12-cv-0032<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

In this patent infringement case, Defendant Medical Components, Inc. ("MedComp") has filed a Motion for Additional Jurisdictional Discovery.[1] In its motion, MedComp seeks an additional two hours of deposition time and the production of various documents from Plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard"). MedComp claims these additional documents are relevant to its argument that Bard is not the owner of the patents-in-suit.[2] Because MedComp has failed to justify its requests for additional deposition time—or production of tax and transfer pricing documents, shipping documentation, and the memorandum of

---

[1] (*See* Overlength Mot. for Add'l Juris. Disc. ("Mot."), Doc. No. 834.)

[2] (*See id*. at 3-4, 8–9, 12, 14; Reply Memo. in Supp. of Mot. for Add'l Juris. Disc., Doc. No. 865.) MedComp's reply reads somewhat like a motion to compel discovery which was already ordered by the court. But the discovery sought was not already ordered. And the issue is really whether the limited Rule 30(b)(6) deposition the court authorized justifies MedComp's requests for the additional discovery it seeks.

understanding—its motion as to these requests is denied. However, MedComp's motion is granted to the extent it requests patent ownership lists and information on any intangible assets Bard transferred during the intercompany transaction in April 2020.[3]

## BACKGROUND

In this and a related action between the same parties, MedComp has vigorously pursued discovery in support of its theory that Bard is not the owner of the patents-in-suit. But MedComp's intensity in seeking this information does not convert to relevancy—and relevance is the touchstone of what is discoverable.[4] In an order dated January 10, 2022, this court limited the scope of the additional discovery MedComp could pursue related to the patent ownership issue.[5] For instance, the court rejected MedComp's request for broad tax-related discovery, noting that at this late stage, "any discovery must be strictly limited to patent ownership as it affects jurisdiction in this case."[6] And in a hearing and a later order addressing the scope of the deposition permitted by that January 10 order, the court reiterated and confirmed its position by, among other things, limiting questioning to certain topics, including, as relevant here:

---

[3] Pursuant to Rule 37-1(b)(5)(B) of the Local Rules of Civil Practice, oral argument is unnecessary; this decision is based on the parties' written briefing.

[4] *See* Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .").

[5] (*See C.R. Bard, Inc., et al. v. Med. Components, Inc.*, No. 2:17-cv-0754 (D. Utah) ("Port III") Order Granting in Part and Den. in Part MedComp's Short-Form Mot. for Juris. Disc., Doc. No. 855.)

[6] (*See id*. at 3.)

2

- "[w]hether any tax has been incurred or paid on revenue derived from Bard Port Products in any jurisdiction by Bard Shannon, by representing itself as owner of the Bard patents-in-suit,"
- any "[t]ransfers of funds between or among Bard or any related entity pertaining to any transfer of ownership or exclusionary rights of the Bard patents-in-suit on account of ownership of the patents-in-suit by Bard Shannon Limited," and
- "[d]ocuments concerning the patents-in-suit provided to PricewaterhouseCoopers regarding ownership of patent rights for purposes of determining the tested parties in the 2018 PwC Report."[7]

## ANALYSIS

In its motion, MedComp seeks broad additional document production and additional deposition time. As discussed below, while much of this requested relief is easily rejected, Bard must produce specific documents, such as (1) any patent ownership lists identified by Bard's Rule 30(b)(6) witness, (2) any information in Bard's "Anaqua" software database (or any other database or files) concerning the ownership, assignment, license, sale, or transfer of any of the patents-in-suit, and (3) information on any intangible assets transferred during the intercompany transaction in April 2020.

---

[7] (*See* Port III, Order Granting in Part and Den. in Part MedComp's Renewed Short-Form Mot. to Compel Compliance with Notice of Depos. 4, Doc. No. 966.)

### A. Additional Deposition Time is Unwarranted

Turning first to MedComp's request for additional deposition time, MedComp argues that because Scott Rittman, Bard's Rule 30(b)(6) witness, could not answer certain tax-related questions, MedComp is entitled to depose a different Bard "tax witness."[8] But a review of the deposition transcript reveals Mr. Rittman did, in fact, answer the questions falling within the scope of the topics previously limited by the court. MedComp is not entitled to additional deposition time simply because Mr. Rittman did not answer a hypothetical question to MedComp's satisfaction. Nor is additional time justified by the fact that Mr. Rittman's responses to some questions (which, arguably, may have been outside the scope of the permitted topics) are disputed by MedComp's tax advisor.[9] Further, to the extent Mr. Rittman testified to consulting with Bard's "tax group" to prepare for his deposition on tax-related patent ownership issues, as opposed to reviewing tax forms on his own, his reliance on what he learned does not (on its own) establish he was unprepared.

---

[8] (*See* Mot. 4–8, Doc. No. 834.) Bard's obligation under Rule 30(b)(6) was to designate and adequately prepare a witness to testify on its behalf on the permitted topics. The choice of corporate designee was Bard's; MedComp could not dictate the specific person or type of person MedComp wanted to appear, nor can it now. *See* Fed. R. Civ. P. 30(b)(6) (providing that the organization must "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf"); *see also* 8A Charles Alan Wright, Artur R. Miller & Richard L. Marcus, Fed. Prac. & Proc. Civ. § 2103 (noting that the party seeking discovery under Rule 30(b)(6) "is not permitted to insist that [the organization] choose a specific person to testify").

[9] (*See* Mot. 6–8, Doc. No. 834.)

4

### B. Limited Additional Document Production is Required

Although no additional deposition time is warranted, MedComp is entitled to a limited number of the documents it requests. However, as discussed below, most of MedComp's additional demands are denied as unjustified.

Among its additional document requests, MedComp seeks extensive U.S. and international income tax forms and schedules from Bard and its affiliates, Bard's parent company, and Bard Shannon Limited spanning multiple years, along with additional transfer pricing files and related documents.[10] As a threshold matter, the court has already rejected MedComp's requests for broad transfer pricing discovery and MedComp has not established why these prior determinations should be reconsidered.

Further, MedComp cannot bootstrap its additional discovery request on its view that Mr. Rittman may have failed to answer certain tax, transfer pricing, and profit allocation questions that, arguably, may have been outside the scope of the permissible deposition topics. Even assuming those questions fell within the permitted scope, the court has made it clear that further discovery on transfer pricing issues would be limited. MedComp has had ample opportunity to justify its need for this discovery, but has repeatedly failed to do so. Indeed, MedComp's latest attempt to establish the relevance of this discovery is, at best, based on speculation that some additional documents may exist supporting its patent ownership theory based on transfer pricing. But Mr. Rittman testified no such transfer of ownership has occurred and that Bard remained the legal

---

[10] (*See id.* at 3–4, 8–9; Ex. C to Mot., Aff. of Derek W. Drysdale 25–26, Doc. No. 834-4.)

owner of the patents-in-suit at all relevant times.[11]  In the face of this testimony, MedComp's speculation is not enough.

Moreover, as noted in this court's prior orders, MedComp has served broad document discovery on the transfer pricing issue and Bard has maintained it produced all responsive documents.[12]  The Rule 30(b)(6) deposition permitted by the court was not intended to permit broad-ranging transfer pricing discovery, but to allow limited discovery on the patent ownership issue and any transfers of recognized exclusionary rights of the patents-in-suit.[13]  Mr. Rittman's deposition, with all its faults, adequately provided MedComp with that opportunity.  Accordingly, no further discovery on the transfer pricing issue is necessary or permitted.

MedComp's argument for production also relies on its technical tax advisor's unsupported claim that some of the requested tax schedules and forms might reveal Bard conveyed exclusionary rights in the patents-in-suit to Bard Shannon.[14]  But at this late stage in this action, this speculative argument carries little weight.

---

[11] (*See, e.g.*, Ex. A. to Mot., Confidential Videotaped Dep. of Scott Rittman ("Rittman Dep."), 54:15–25, 55:1–25; 56:1, Doc. No. 836-2 (sealed).)

[12] (*See* Order Den. Def's Mot. to Compel Prod. of Transfer Pricing Disc. and for 30(b)(6) Dep. Test. 1–4, Doc. No. 710.)

[13] (*See* Port III Order Granting in Part and Den. in Part MedComp's Short-Form Mot. for Juris. Disc. 4, Doc. No. 855; *see also* Port III Order Granting in Part and Den. in Part MedComp's Renewed Short-Form Mot. to Compel Compliance with Notice of Deps. of C.R. Bard, Inc. and Bard Vascular, Inc., Doc. No. 966.)

[14] (*See* Mot. 8–9, Doc. No. 834.)

MedComp's demand for production of "shipping documentation" related to the importation of Bard's port products into the United States under the Distribution Agreement is similarly denied as unjustified. In its opposition to MedComp's motion, Bard notes that Mr. Rittman testified the Distribution Agreement does not affect the patents-in-suit.[15] Given this testimony, MedComp has not established how such documents would otherwise be relevant to ownership of the patents-in-suit.

The same result holds for MedComp's request for the "memorandum of understanding" referenced in the Operating Agreement. While the court permitted a limited examination on this document at the Rule 30(b)(6) deposition to the extent it was "applicable to the patents-in-suit," MedComp only asked two questions about it.[16] In response, Mr. Rittman testified it was a "one page" document which could be characterized as "an agreement to reach a later agreement which then ended up being the Operating Agreement."[17] There is no dispute that the Operating Agreement was produced to MedComp—and Mr. Rittman testified it did not cover the patents-in-suit[18] in response to MedComp extensive examination at the Rule 30(b6)(b) deposition.[19] Given

---

[15] (*See, e.g.*, Bard's Opp'n to MedComp's Mot. for Juris. Disc. ("Opp'n") 14, Doc. No. 846 (sealed version at Doc. No. 848).)

[16] (*See* Rittman Dep. 164:16-23, Doc. No. 836-2 (sealed).)

[17] (*See* Opp'n 15, Doc. No. 848 (sealed); Rittman Dep. 164:20–22, Doc. No. 836-2 (sealed).)

[18] (*See* Rittman Dep. 158:5–160:17, Doc. No. 836-2 (sealed).)

[19] (*See id.* at 152:9–169:16.)

this testimony, MedComp has not established how this precursor memorandum is applicable to the ownership of the patents-in-suit.

While the documents discussed above do not need to be produced, MedComp has established the need for production of other specific documents. Among these are the "lists of all patents owned by Bard" identified by Mr. Rittman (which may have been prepared when Bard was acquired by Becton Dickinson).[20] To the extent this, or any other, patent ownership list exists, it must be produced.[21] This includes the list or lists identified by Mr. Rittman, but also any information in Bard's "Anaqua" software database (or any other database or files) concerning the ownership, assignment, license, sale, or transfer of any of the patents-in-suit.

To a more limited extent, MedComp's position is also well-taken regarding the "intercompany transaction" between Bard and Bard Shannon in April 2020.[22] Mr. Rittman testified the transfers involved in this transaction did not include any "US patent rights"—i.e., the patents-in-suit.[23] MedComp argues (and Bard does not dispute) that a table accompanying the disclosure of this transaction identified some of the intangible assets transferred as belonging to Bard.[24] MedComp asserts that, notwithstanding the

---

[20] (*See* Rittman Dep. 138:18-23, Doc. No. 836-2 (sealed).)

[21] *See* District of Utah LPR 2.2.(c)(1)(D) (requiring party asserting claim for infringement to include in its initial disclosures "all documents concerning ownership of the patent rights").

[22] (*See* Mot. 9–12, Doc. No. 834.)

[23] (See Rittman Dep. 254:1–19, Doc. No. 834-2 (sealed).)

[24] (*See* Mot. 11, Doc. No. 834.)

witness's testimony, such assets could have included the patents-in-suit and it can only determine what patent assets Bard transferred by reviewing the transaction documents.[25]  While this is a close question, where this transaction was first publicly disclosed by Bard Shannon in 2023,[26] Bard must produce documents sufficient to identify the intangible assets transferred—to allow MedComp to "look behind the veil" of the disclosure and the witness's testimony, to determine if this multibillion-dollar transaction concerned any of the patents-in-suit.

For all these reasons, as outlined above, MedComp's motion[27] is granted in part and denied in part.  Within ten days of the date of this order, Bard must produce to MedComp:

- any patent ownership lists identified by Bard's Rule 30(b)(6) witness;
- any information in Bard's "Anaqua" software database (or any other database or files) concerning the ownership, assignment, license, sale, or transfer of any of the patents-in-suit; and

---

[25] (*See id.* at 11–12.)

[26] (*See id.* at 10–11.)

[27] (Doc. No. 834.)

- documents or information sufficient to identify any intangible assets transferred by Bard during the intercompany transaction in April 2020.

DATED this 14th day of May, 2024.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge