IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>MEDICAL COMPONENTS, INC.,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OR CERTIFICATION FOR INTERLOCUTORY APPEAL<br><br>Case No. 2:12-CV-00032-JNP-DAO<br><br>Chief District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard")[1] brought this action against Defendant Medical Components, Inc. ("MedComp"), asserting claims of patent infringement. The court issued a memorandum and order resolving claim construction disputes and the parties' cross motions for summary judgment. ECF No. 946 ("Mem. Decision & Order"). MedComp now moves for the court to reconsider two questions of law addressed in this prior order or, in the alternative, certify the questions for immediate interlocutory appeal. ECF No. 949 ("Def.'s Mot."). For the reasons below, the motion is DENIED.

---

[1] Bard Peripheral Vascular is C.R. Bard's wholly owned subsidiary. Because their status as distinct legal identities is immaterial to the present motion, the court refers to them as a single entity for ease of exposition.

## BACKGROUND

At the center of this case, which has been ongoing for over fourteen years and whose docket now has over a thousand entries, are four patents. Bard invokes three patents with U.S. patent numbers 7,785,302 ("the '302 patent"), 7,947,022 ("the '022 patent"), and 7,959,615 ("the '615 patent") (collectively, "Bard's patents"). ECF No. 69-2 ("Pls.' '302 Patent"); ECF No. 69-1 ("Pls.' '022 Patent"); ECF No. 69-3 ("Pls.' '615 Patent"). MedComp, in turn, asserts one patent with U.S. patent number 8,021,324 ("the '324 patent"). ECF No. 750-1 ("Def.'s '324 Patent").

All four patents relate to vascular access ports, which are

> implanted beneath a patient's skin to enable direct access to a central vein for delivery of medicine or other fluids. These ports typically include a bio-compatible housing, a septum, and a cavity. Once the port is implanted, a doctor punctures the patient's skin and the septum with a needle to deliver fluid into the cavity. The fluid is then transmitted from the cavity into a catheter, which is sutured to one of the patient's central veins. For patients requiring frequent and long-term intravenous therapy, these devices allow medical professionals to easily and repeatedly access a major vein without having to go through tissue or muscle each time.

*C.R. Bard, Inc. v. AngioDynamics, Inc.*, 748 F. App'x 1009, 1011 (Fed. Cir. 2018) (citation modified) (hereinafter, *AngioDynamics 2018*). The medical problem giving rise to these patents is that "doctors were unable to identify and distinguish specific types of ports after they were implanted." *Id.* Specifically, doctors could not distinguish power injectable ports—which are "designed to be injected and pressurized by mechanical assistance at high flow rates"—from "regular access ports [that] are not manufactured to withstand high-pressure injections." *Id.* (citation modified). The potential confusion created immense risk because "[p]ower injecting a non-power injectable port can cause the port to fracture while in the patient's body, leading to serious bodily injury or even death." *Id.* at 1012.

After the Food and Drug Administration ("FDA") issued warnings regarding this problem, Bard "proceeded to develop identifiable features that would reliably convey [power injectability] to medical providers after the port was implanted." *C. R. Bard, Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1375 (Fed. Cir. 2020) (hereinafter, *AngioDynamics 2020*). One such feature "was a radiographic marker in the form of the letters 'CT' etched in titanium foil on the device" that "could be detected during an x-ray scan." *Id.* Other identifying features "included a triangular shape and small bumps that were palpable through the skin." *Id.* Bard's patents correspond to these methods of identification—with the '302 and '022 patents describing identification through radiographic markers and the '615 patent describing identification through structural features detectable through palpation. Mem. Decision & Order at 2.

Bard alleged that MedComp's vascular access ports unlawfully infringed on its '302, '022, and '651 patents. ECF No. 69 ("Pls.' Am. Compl."). MedComp asserted counterclaims, alleging that Bard's three patents were invalid and, separately, that Bard's vascular access ports violated MedComp's own '324 patent—which was issued after the three Bard patents and describes using "x-ray discernable indicia" on an access port. ECF No. 643 ("Def.'s Second Am. Answer & Counterclaims").[2] Bard also filed lawsuits against companies with similar technology, including AngioDynamics, Inc. and Smiths Medical ASD, Inc. *See AngioDynamics 2020*, 979 F.3d at 1375–77; *C.R. Bard, Inc. v. Smiths Med. ASD, Inc.*, No. 212CV00036RJSDAO, 2020 WL 4050455, at *1 (D. Utah July 20, 2020). The litigation involving AngioDynamics is particularly relevant because "the claims at issue were substantially similar to the asserted claims here" and involved

---

[2] ECF No. 641 (redacted). After the first cite to any sealed docket entry, the court will provide the corresponding redacted entry.

legal issues "virtually identical" to those in this case. *C.R. Bard, Inc. v. Med. Components, Inc.*, No. 2022-1136, 2023 WL 2064163, at *2 (Fed. Cir. Feb. 17, 2023). The Federal Circuit has issued several opinions in the AngioDynamics litigation, and the parties extensively debate the significance of these opinions for the current case.

In 2021, then-Chief Judge Robert Shelby held that all four asserted patents were invalid under 35 U.S.C. § 101 "because the claims were solely directed to non-functional printed matter and because the claims were directed to the abstract idea of using an identifier to communicate information about the power injectability of the underlying port with no inventive concept." *C.R. Bard*, 2023 WL 2064163, at *2 (citation modified); ECF No. 715-1 ("Mem. Decision & Order Granting Def.'s Summ. J. Mot.") (holding that Bard's asserted claims in the '302, '022, and '615 patents were invalid); ECF No. 765 ("Mem. Decision & Order Granting Pls.' Summ. J. Mot.") (holding that MedComp's asserted claims in the '324 patent were invalid). However, the Federal Circuit reversed and vacated these rulings on the grounds that "the claims were not solely directed to non-functional printed matter" but instead "were also directed to the means by which that information is conveyed." *C.R. Bard*, 2023 WL 2064163, at *2 (citation modified). The Federal Circuit held that this result was a direct consequence of its *AngioDynamics 2020* opinion. *Id.* at *2.

After the case was remanded and reassigned to the undersigned, the court addressed the parties' motions for summary judgment and resolution of claim construction disputes. Mem. Decision & Order; ECF No. 894 ("Pls.' Summ. J. Mot.")[3]; ECF No. 896 ("Def.'s Summ. J. Mot.");

---

[3] ECF No. 892 (redacted).

ECF No. 909 ("Joint Claim Construction Mot."). There are two issues addressed in this order that are the focus of MedComp's motion for reconsideration or certification for interlocutory appeal.

The first issue is whether Bard's patents include a claim limitation with patentable weight that its claimed access ports are power injectable. Def.'s Mot. at 2–7. In advancing its proposed claim construction, MedComp had argued that various language in Bard's patents, which described markers that identified the access port as power injectable, was directed at non-functional printed matter and thus was entitled to no patentable weight based on the Federal Circuit's *AngioDynamics 2020* opinion. ECF No. 895 ("Def.'s Claim Construction Br.") at 8–11; ECF No. 910 ("Def.'s Claim Construction Opp'n Br.") at 9–13. The court disagreed—relying in large part on the Federal Circuit's *AngioDynamics 2018* opinion—and found that this claim language should be afforded patentable weight to the extent that it asserted that the claimed ports were in fact power injectable and not merely labeled as such. Mem. Decision & Order at 7–10. Based on this claim construction holding, the court rejected MedComp's argument that Bard's patents had been anticipated by U.S. patent number 6,287,293 ("Jones") and were thus invalid. *Id.* at 34. Since the court's order, the Federal Circuit has issued another *AngioDynamics* opinion that is potentially relevant to this issue, on which the parties filed supplemental briefing. *See C.R. Bard, Inc. v. AngioDynamics, Inc.*, No. 2023-2056, 2025 WL 3627397 (Fed. Cir. Dec. 15, 2025) (hereinafter, *AngioDynamics 2025*); ECF No. 991 ("Def.'s Suppl. Br."); ECF No. 993 ("Pls.' Suppl. Br.").

The second issue addressed in MedComp's current motion is whether Bard adequately established reduction to practice without identifying specific human inventors. Def.'s Mot. at 7–10. Bard had moved for summary judgment on MedComp's counterclaim on the grounds that MedComp's '324 patent was invalid because it had been anticipated by Bard's PowerPort MRI, as shown by Bard's 510(k) application to the FDA. Pls.' Summ. J. Mot. at 17–32. MedComp, in turn,

5

argued that Bard failed to provide evidence that a human inventor both "conceived the invention and reduced it to practice as required by [the applicable statute]." ECF No. 907 ("Def.'s Summ. J. Opp'n")[4] at 17–21. The court rejected this argument and entered summary judgment against MedComp on its counterclaim, holding that Bard had adequately established reduction to practice without identifying specific human inventors. Mem. Decision & Order at 23–24, 32. MedComp now moves for reconsideration and certification of interlocutory appeal on this issue, arguing that the court failed to adequately consider authority indicating that an inventor must be a natural person, as opposed to a corporate entity, in the relevant statutory context. Def.'s Mot. at 7–10.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(b), an interlocutory order "may be revised at any time before the entry of a judgment." FED. R. CIV. P. 54(b); *Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs.*, 212 F. App'x 760, 765 (10th Cir. 2007) ("A district court has discretion to revise interlocutory orders prior to entry of final judgment."). *See also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007) (holding that on "purely procedural question[s] not pertaining to patent law . . . the law of the regional circuit" controls). And "[t]he Tenth Circuit has not cabined district courts' discretion beyond what [R]ule 54(b) provides." *Chandhok v. Companion Life Ins. Co.*, 555 F. Supp. 3d 1092, 1116 (D.N.M. 2021). Thus, this court has discretion to "select the standard of review for a motion to reconsider an interlocutory order" and can, for example "review the earlier ruling de novo from scratch, . . . review the ruling de novo but limit its review," or "refuse to entertain motions to reconsider altogether." *Id.* at 1117. However, "[f]or guidance, the court may look to the standard used to review a motion made pursuant to

---

[4] ECF No. 905 (redacted).

Federal Rule of Civil Procedure 59(e)," which includes the following: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Ankeney v. Zavaras*, 524 F. App'x 454, 458 (10th Cir. 2013); *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

Certification for an interlocutory appeal is proper when the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Even "when the § 1292(b) statutory requirements are met, district courts retain the 'authority to decide whether to certify an order for interlocutory appeal.'" *Chamberlain v. Crown Asset Mgmt.*, 622 F. Supp. 3d 1068, 1071 (D. Utah 2022) (quoting *Pack v. Investools, Inc.*, No. 2:09-CV-1042-TS, 2011 WL 2161098, at *1 (D. Utah June 1, 2011)).

## DISCUSSION

The court considers the two issues raised by MedComp, concluding that they warrant neither reconsideration nor certification.

## I.      Printed Matter

The first issue raised by MedComp is whether the court erroneously held that Bard's patents contained claim limitations with patentable weight that required the ports to be power injectable in light of the Federal Circuit's opinions on printed matter doctrine. Def.'s Mot. at 2–7.

The printed matter doctrine exists "to guard against attempts to monopolize the conveyance of information using any medium." *AngioDynamics 2020*, 979 F.3d at 1381. Under the doctrine, "printed matter encompasses any information claimed for its communicative content" and such printed matter is not patentable "unless it is functionally related to its substrate, which encompasses the structural elements of the claimed invention." *Id.* (citation modified). Here, the crucial inquiry

is "whether the printed matter merely informs people of the claimed information, or whether it instead interacts with the other elements of the claim to create a new functionality in a claimed device or to cause a specific action in a claimed process." *Id.* For example, the Federal Circuit has distinguished dice markings that merely communicate information from "volumetric indicia on the side of a measuring cup" that make a "cup useful for measuring partial recipes" and thus constitute functional printed matter. *Id. See also In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1161 (Fed. Cir. 2018); *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1064–65 (Fed. Cir. 2010). However, the printed matter doctrine only applies to claim limitations when the claimed feature is "claimed for what it communicates." *In re Distefano*, 808 F.3d 845, 850 (Fed. Cir. 2015). If a claim limitation has nothing to do with communication, the claim limitation is not directed at printed matter and the printed matter doctrine is simply inapplicable.

In its summary judgment motion, MedComp argued that various language in Bard's patents was directed at non-functional printed matter and thus entitled to no patentable weight, such as the following: (1) "alphanumeric characters that convey to a practitioner that the venous access port assembly is power injectable"; (2) "markings including the alphanumeric message 'CT' that conveys to a practitioner . . . that the venous access port assembly is suitable for power injection"; (3) "identification feature including one or more alphanumeric characters identifying the access port as a power-injectable port"; (4) "at least one structural feature of the access port identifying the access port as being power injectable." Def.'s Summ. J. Mot. at 23–32. It argued that these terms are merely directed at non-functional printed matter based on *AngioDynamics 2020*. Def.'s Claim Construction Br. at 9–11. *See AngioDynamics 2020*, 979 F.3d at 1382 ("[W]e hold that the content of the information conveyed by the claimed markers—i.e. that the claimed access ports are suitable for injection at the claimed pressure and flow rate—is printed matter not entitled to

patentable weight."). MedComp argued that once this language is properly disregarded under printed matter doctrine, all of Bard's patents are "invalid for anticipation or obviousness over the prior art" because "the features of the claims are either identically disclosed in the Jones reference or obvious over the disclosure of Jones alone or in combination with [additional] prior art." Def.'s Summ. J. Mot. at 22.

This court, however, rejected MedComp's argument that these terms were merely directed at non-functional printed matter because they "require the port to *be* power injectable, not just *identify* the port as power injectable." Mem. Decision & Order at 7 (emphasis in original). In reaching this conclusion, this court relied extensively on *AngioDynamics 2018*. *Id.* at 6–7. *See AngioDynamics 2018*, 748 F. App'x at 1016 (construing claims in Bard's patents "to mean that the claimed access port is power injectable"). Insofar as the claim language discussed above describes a "port that *is* power injectable" and does not merely describe the communicative content of the markers, the language "presents a new functionality to the claimed device" and is entitled to patentable weight. *Id.* at 9 (emphasis in original). Based on this holding that Bard's patents include claim limitations with patentable weight that the power access ports are power injectable and not merely labeled as such, the court held that Bard's patents were not anticipated by the Jones patent because the latter contained no similar claim limitation. *Id.* at 34.

MedComp argues that this analysis is inconsistent with Federal Circuit caselaw holding that the information conveyed by the markers in question is non-functional printed matter entitled to no patentable weight. Def.'s Mot. at 4–6. The court distinguished Bard's patents from Jones solely on the basis that Bard's claims require the access port to be power injectable. But if the language in Bard's patents purporting to create this requirement—such as claim language requiring that the port include "at least one structural feature of the access port identifying the access port as

9

being power injectable"—must be disregarded entirely under the printed matter doctrine, the court's basis for distinguishing Bard's patents from Jones disappears and MedComp likely is entitled to summary judgment on Bard's claims. Pls.' '615 Patent at 45; Def.'s Summ. J. Mot. at 32–33. With these stakes in mind, the court turns to the relevant Federal Circuit opinions and considers whether they support MedComp's contentions.

The first case is the Federal Circuit's non-precedential *AngioDynamics 2018* opinion involving the same Bard patents at issue in this case. *See AngioDynamics 2018*, 748 F. App'x at 1011. The Patent Trial and Appeal Board (the "Board") had found that various claims in these patents were invalid. *Id.* at 1012–13. In reaching this result, the Board had found that various claims requiring "the recited access port to contain a radiopaque alphanumeric message indicating that the assembly is power injectable" were "broad enough to encompass both power injectable and non-power injectable ports" and "merely require[d] that the access port be *labeled* as power injectable." *Id.* at 1016–17 (citation modified) (emphasis in original). But the Federal Circuit reversed, holding that "[t]he Board's reading of the claims as reaching falsely labeled ports [was] unreasonably broad" based on the claim language and the prosecution history of the patents. *Id.* at 1016–17. This opinion clearly supports the court's conclusion that Bard's patents require the claimed access ports to be power injectable, but it does not discuss printed matter doctrine and its effects on what claims limitations are entitled to patentable weight for the purposes of anticipation. *See also id.* at 1017 n.9 (explicitly "declin[ing] to address" a question about whether a specific claim limitation "ought to be afforded patentable weight under the printed matter doctrine").

Next, the Federal Circuit issued the precedential *AngioDynamics 2020* opinion that extensively discussed the printed matter doctrine. *AngioDynamics 2020*, 979 F.3d at 1380–85. This case involved "substantially similar" claims from a different collection of Bard's patents that

"require the presence of a radiographic marker identifying the claimed port as power injectable." *C.R. Bard*, 2023 WL 2064163, at *2 (Fed. Cir. Feb. 17, 2023); *AngioDynamics 2020*, 979 F.3d at 1375. There, the Federal Circuit partially reversed the district court and held that "that a genuine dispute of material fact preclude[d] summary judgment as to anticipation." *AngioDynamics 2020*, 979 F.3d at 1375. It concluded that Bard's claims requiring "one or more markers 'identifying' or 'confirming' that the implanted access port is 'suitable' [for power injection]" were directed at printed matter insofar that they were "directed to the content of the information conveyed." *Id.* at 1382. Bard had argued that this printed matter was functional "because it makes the port self-identifying," but the court emphatically rejected this argument because it would "eviscerate . . . established case law that simply adding new instructions to a known product does not create a functional relationship." *Id.* (citation modified). Accordingly, it "h[eld] that the content of the information conveyed by the claimed markers—i.e. that the claimed access ports are suitable for injection at the claimed pressure and flow rate—is printed matter not entitled to patentable weight." *Id.*

In the same 2020 opinion, the Federal Circuit concluded that Bard's patents were "not solely directed [at] printed matter" because they were also directed at "the means by which that information is conveyed," namely using radiographic markers that could be easily detected through x-ray scans and other imaging procedures. *Id.* at 1384. Because there were triable issues of fact "over whether any of the prior art access ports contained a 'radiographic marker' or 'radiographic feature,'" the Federal Circuit reversed the district court for improperly granting summary judgment on anticipation. *Id.* at 1384–85. But *AngioDynamics 2020*'s holding on the means of conveying information is consistent with its earlier holding that "the content of the information conveyed by

the claimed markers . . . is [non-functional] printed matter not entitled to patentable weight," which is the basis for MedComp's present argument. *Id.* at 1382.

The parties mainly debate whether the 2018 or 2020 opinions should be given more weight, but the court need not address this disagreement because its earlier order simultaneously followed both opinions, which are consistent with one another. Following *AngioDynamics 2018*, the court held that the disputed claim language expressed two distinct requirements: (1) the claimed access ports have markers or structural features that would communicate to a medical practitioner that the port is power injectable, regardless of whether the ports are actually power injectable; and (2) the claimed access ports are in fact power injectable. To the extent that the claim language expresses the first requirement and merely describes the information communicated by the markers or structural features, the language is not entitled to any patentable weight because it is directed at non-functional printed matter in light of *AngioDynamics 2020*. But to the extent that the claim language expresses the second requirement, it describes a claim limitation that is exclusively about whether the claimed access port can withstand power injection, which has nothing to do with communication. This second claim limitation is not being "claimed for its communicative content" and thus is simply outside the ambit of the printed matter doctrine and can be given patentable weight, with *AngioDynamics 2020* in no way holding otherwise. *IOENGINE, LLC v. Ingenico Inc.*, 100 F.4th 1395, 1405 (Fed. Cir. 2024); *Distefano*, 808 F.3d at 849–50. The court distinguished between these communicative and non-communicative claim limitations and only gave patentable weight to the latter, which is all that the printed matter doctrine and *AngioDynamics 2020* require. MedComp thus fails to identify any way in which the court failed to follow *AngioDynamics 2020*.

Admittedly, the court may have caused confusion by describing its analysis as turning on whether the printed matter doctrine applies to specific terms in Bard's patents, such as "power

injectable" or "suitable for power injection." *See* Mem. Decision & Order at 5, 7. But just as testimony may be offered for many purposes, only some of which implicate the hearsay rule, claim language may simultaneously describe distinct limitations, only some of which implicate the printed matter doctrine. While the language "power injectable" or "suitable for power injection" is entitled to no patentable weight to the extent it is merely being used to describe the communicative content of the marks, this does not mean it must be thrown out of the analysis entirely. Rather, it can still be given patentable weight to the extent it describes a non-communicative claim limitation, like testimony admitted only for a non-hearsay purpose. MedComp collapses this distinction and assumes that this court relied on a communicative limitation regarding the information conveyed by the markers, when in fact it relied on a non-communicative limitation regarding the power injectability of the ports. *See* Def.'s Mot. at 4–5; ECF No. 957 ("Def.'s Reply") at 5. In other words, MedComp assumes a false binary where either all claim limitations expressed by the language are given patentable weight or else the language must be disregarded entirely. But, in fact, there is doctrinal space for the court to give patentable weight to some but not all of the claim limitations expressed by the contested language—which enabled the court to distinguish Bard's patents from Jones without improperly giving patentable weight to claims directed at non-functional printed matter. *Cf. AngioDynamics 2020,* 979 F.3d at 1384 (holding that claim language in Bard's patents was partially but "not solely" directed at non-functional printed matter).

To be sure, the court's interpretation that the language in Bard's patents expresses distinct claim limitations, some about the power injectability of the ports and others about what content is communicated, is contestable. For example, the language that Bard's claimed port have "structural feature of the access port identifying the access port as being power injectable" can be read as only

describing what the marks communicate without describing whether the ports are power injectable. Pls.' '615 Patent at 45. But the Federal Circuit has already rejected that interpretation, albeit in the 2018 non-precedential opinion to which MedComp was not a party and in a somewhat different doctrinal context. *AngioDynamics 2018*, 748 F. App'x at 1016–17. In any event, MedComp fails to argue that this interpretation is predicated on an incorrect understanding of the claim language or prosecution history.[5] *See* Mem. Decision & Order at 7; *AngioDynamics 2018*, 748 F. App'x at 1016–17.

And this court's prior analysis is in no way disturbed by the Federal Circuit's *AngioDynamics 2025* opinion. There, the Federal Circuit merely confirmed its 2020 holding that any limitations claimed for the "informational content" conveyed by markers are solely directed at non-functional printed matter and are entitled to no patentable weight. *AngioDynamics 2025*, 2025 WL 3627397, at *3. The 2025 opinion does not suggest that the court erred in following the 2018 opinion's interpretation that Bard's patents claim that its ports are power injectable. Nor does it suggest that the printed matter doctrine applies to these non-communicative claim limitations, which are exclusively about whether ports can safely withstand power injection and in no way depend on the communication of information. MedComp's arguments regarding the 2025 opinion thus reflect the same false binary invoked in its earlier briefing. Def.'s Suppl. Br. It fails to

---

[5] Importantly, this interpretation remains viable even if the court credits the argument MedComp's counsel orally advanced regarding claim construction in the AngioDynamics litigation. MedComp's counsel argued that the Federal Circuit held that the claims at issue in *AngioDynamics 2020* and *2025* required power injectability based on language specifying that the claimed ports were "vascular access port[s]." *AngioDynamics 2020*, 979 F.3d at 1376, 1383–84; *AngioDynamics 2025*, 2025 WL 3627397, at *4. This language is absent from the claims at issue here, which removes one route for finding a power injectability requirement. But the foreclosure of one route is consistent with another route remaining open—as shown by the reasoning of the court, which MedComp simply fails to address.

appreciate that Bard's claim language may simultaneously express multiple claim limitations and only needs to be disregarded to the extent that it expresses claim limitations solely directed at non-functional printed matter.

In short, on this issue regarding printed matter doctrine, MedComp has neither demonstrated that the court's analysis was erroneous nor presented substantial ground for difference of opinion. The court's application of printed matter doctrine and the Federal Circuit's opinions are consistent and MedComp fails to persuasively argue otherwise. Therefore, with respect to this issue, MedComp's request for reconsideration and certification is denied.[6]

## II.    Inventive Entity

The second issue raised by MedComp is whether Bard adequately established that MedComp's '324 patent was invalid based on prior conception and reduction to practice without identifying specific human inventors. Def.'s Mot. at 7–10.

Bard had moved for summary judgment on MedComp's counterclaim on the grounds that MedComp's '324 patent had been anticipated by Bard's PowerPort MRI. Pls.' Summ. J. Mot. at 17–32. Specifically, MedComp argued that Bard's patent was invalid under the version of 35 U.S.C. § 102(g) that was in effect before amendments from the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011).[7] Pls.' Summ. J. Mot. at 17. Under this provision, MedComp's patent would be invalid if

---

[6] The court denies MedComp's request for certification based on its failure to establish the § 1292(b) requirements, but, in the alternative, it declines to exercise any discretion it may have to certify because of the delay that would accompany an interlocutory appeal.

[7] Both parties agree that the pre-AIA version of § 102(g) is controlling based on the timing of when MedComp's patent was filed. Accordingly, the court's references to § 102(g) are to the pre-AIA version.

before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it. In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

35 U.S.C. § 102(g)(2) (pre-AIA). MedComp argued that Bard had failed to establish invalidity under this provision because it "did not identify or provide evidence of *another inventor* (one or more individuals) who allegedly conceived the invention and reduced it to practice as required by . . . § 102 (g)(2)" and instead only identified itself, a collection of two corporations, as the inventor. Def.'s Summ. J. Opp'n at 19 (emphasis in original). The court, however, rejected this argument and held that "there is no restriction under [§] 102(g) that 'another inventor' must be an individual" as opposed to a corporate entity. Mem. Decision & Order at 24. In reaching this conclusion, the court relied on Federal Circuit cases "repeatedly f[inding] that a corporation constitutes a prior inventor under [§] 102(g)" and "the plain language of the statute." *Id.* (citing *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 774 F.3d 968, 975 (Fed. Cir. 2014); *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300 (Fed. Cir. 2012)). Based on this holding, the court entered summary judgment against MedComp on its counterclaim and held that "[t]he asserted claims of the '324 patent [were] invalid because they [were] anticipated by Bard's PowerPort MRI." *Id.* at 32.

Now, MedComp challenges the court's interpretation of § 102(g) based on a variety of legal sources suggesting that an inventor must be a human, though not directly in the context of § 102(g). Def.'s Mot. at 6–8. MedComp also contends that the court erroneously "relied on a pair of cases that *referred to* a company as a prior inventor[] but did not *hold* that a *company* can be an inventor." *Id.* at 8 (emphasis in original). On its reading, the apparent references to corporate parties as

16

inventors reflect imprecise language—where a company is used as a stand-in for specific human inventors with which it is associated—and do not alter the fact that the inventive entities for the purposes of § 102(g) must be specific humans. *Id.* Bard, in turn, emphasizes that the authority cited by MedComp "concerns the word 'inventor' in the context of a U.S. patent or patent application generally, not in the context of invalidating prior art under § 102(g)." Pls.' Opp'n at 9. It further contends that in both *Tyco Healthcare Group LP v. Ethicon Endo-Surgery, Inc.* and *Fox Group, Inc. v. Cree, Inc.*, "the Federal Circuit recognized that, for purposes of establishing reduction to practice to establish prior invention under § 102(g), the identity of specific individuals who are 'inventors' is not required." *Id.* at 9–10.

As an initial matter, the court notes that both *Tyco Healthcare Group* and *Fox Group* are not entirely inconsistent with MedComp's interpretation. Neither case directly addressed whether a corporation may qualify as an inventor for the purposes of § 102(g), and it appears that the issue currently raised by MedComp was simply not raised by any of the parties before the Federal Circuit. To be sure, both *Tyco Healthcare Group* and *Fox Group* are most naturally read as establishing that a corporation may qualify as an inventor under § 102(g). *See Tyco Healthcare Grp.*, 774 F.3d at 975; *Fox Grp.*, 700 F.3d at 1305. But MedComp's position that the references to corporate inventorship are merely shorthand for invention by individuals within the company is not outlandish. *See* Def.'s Reply at 9–10 (defending this interpretation).

And while MedComp presents no controlling authority directly establishing that an inventor under § 102(g) must be a natural person, it does provide ample evidence showing that the word "inventor" is limited to humans in the somewhat related context of patent applications, both before and after the AIA. *See* Def.'s Mot. at 7–8 (collecting sources); *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993) ("EDO could never have been declared an 'inventor,'

17

as EDO was merely a corporate assignee and only natural persons can be 'inventors.'"); *Thaler v. Vidal*, 43 F.4th 1207, 1212 (Fed. Cir. 2022) ("[T]he Patent Act, when considered in its entirety, confirms that 'inventors' must be human beings.").[8] This line of authority in the context of patent applications certainly lends some support to MedComp's interpretation. *See Voracek v. Nicholson*, 421 F.3d 1299, 1304 (Fed. Cir. 2005) ("[S]imilar terms used in different parts of the same statute or regulation presumptively have the same meaning."). But MedComp fails to fully engage with the reasons that the definition of inventor may be broader in the context of § 102(g) than in the context of patent applications—such as the fact that § 102(g) claims are often advanced decades after the inventive activity occurred when it is much more challenging to identify the specific individuals responsible for the invention.

In any event, the court finds that MedComp has failed to make a sufficient showing to justify reconsideration or certification. Because the controlling authority establishing that an inventor must be human occurs in the distinct context of patent applications, MedComp fails to show that the court's order was clearly erroneous. And it relies entirely on authority and arguments that had already been presented to the court, as MedComp's own counsel acknowledged. The court, therefore, declines to exercise any discretion it may have to certify. The mere fact that MedComp's interpretation of § 102(g) is colorable does not justify further delay in this fourteen-year-old case. The court is aware of its fallibility on this specific issue and in general, but it is equally aware of

---

[8] While *Thaler* can be read as interpreting the word "inventor" across the entire Patent Act, as MedComp's counsel argued at oral argument, it relies on a post-AIA statutory definition of "inventor" and thus does not address the pre-AIA state of the law. *See Thaler* 43 F.4th at 1211; 35 U.S.C. § 100 (pre-AIA) (lacking the definition of "inventor" on which *Thaler*'s analysis relies). And, revealingly, the relevant pre-AIA statutory definition of "inventor" that MedComp cites only applies in the context of patent applications. *See* Def.'s Mot. at 7 (citing 35 U.S.C. § 115 (pre-AIA)).

its responsibility "to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1.

Accordingly, on the issue of whether Bard adequately established conception and reduction to practice for the purposes of § 102(g), the court denies the request for reconsideration and certification.

## CONCLUSION AND ORDER

For the reasons above, MedComp's motion for reconsideration and certification for interlocutory appeal is DENIED.

DATED July 10, 2026

BY THE COURT

Jill N. Parrish
United States District Court Judge