IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MEDICAL COMPONENTS, INC., <br><br> Defendant. | MEMORANDUM DECISION AND ORDER REGARDING DEFENDANT'S MOTIONS TO AMEND INVALIDITY CONTENTIONS AND STRIKE AND SUPPLEMENT EXPERT REPORTS <br><br> Case No. 2:12-CV-00032-JNP-DAO <br><br> Chief District Judge Jill N. Parrish <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard")[1] brought this action against Defendant Medical Components, Inc. ("MedComp"), asserting claims of patent infringement. Before the court are several motions brought by MedComp: (1) a motion for leave to amend its invalidity contentions; (2) a motion to strike portions of one of Bard's expert reports; and (3) a motion for leave to supplement its own expert reports. ECF No. 964 ("Def.'s First Mot."); ECF No. 972 ("Def.'s Second Mot."); ECF No. 977 ("Def.'s Third Mot."). For the reasons below, the first and the third motions are DENIED and the second motion is GRANTED.

## BACKGROUND

This case involves patents that describe vascular access ports, which are

---

[1] Bard Peripheral Vascular is C.R. Bard's wholly owned subsidiary. Because their status as distinct legal identities is immaterial to the present motions, the court refers to them as a single entity for ease of exposition.

implanted beneath a patient's skin to enable direct access to a central vein for delivery of medicine or other fluids. These ports typically include a bio-compatible housing, a septum, and a cavity. Once the port is implanted, a doctor punctures the patient's skin and the septum with a needle to deliver fluid into the cavity. The fluid is then transmitted from the cavity into a catheter, which is sutured to one of the patient's central veins. For patients requiring frequent and long-term intravenous therapy, these devices allow medical professionals to easily and repeatedly access a major vein without having to go through tissue or muscle each time.

*C.R. Bard, Inc. v. AngioDynamics, Inc.*, 748 F. App'x 1009, 1011 (Fed. Cir. 2018) (citation modified) (hereinafter, *AngioDynamics 2018*). The key problem giving rise to these patents is that doctors were unable to determine whether ports were power injectable—i.e., capable of withstanding high-pressure injection—which created the risk that doctors would power inject non-power injectable ports and cause serious injury or death. *Id.* at 1011–12.

After the Food and Drug Administration ("FDA") issued warnings regarding this problem, Bard included radiographic markers, detectable through x-ray imaging, and structural features on its power-injectable ports that would enable medical practitioners to know that the ports can safely withstand power injection. *C.R. Bard, Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1375 (Fed. Cir. 2020) (hereinafter, *AngioDynamics 2020*). The Bard patents, with U.S. patent numbers 7,785,302 ("the '302 patent"), 7,947,022 ("the '022 patent"), and 7,959,615 ("the '615 patent") (collectively, "Bard's patents"), correspond to these methods of identification. ECF No. 69-2 ("Pls.' '302 Patent"); ECF No. 69-1 ("Pls.' '022 Patent"); ECF No. 69-3 ("Pls.' '615 Patent").

Bard brought suit, alleging that MedComp's access ports unlawfully infringed on these three patents. ECF No. 69 ("Pls.' Am. Compl."). MedComp raised counterclaims, alleging that Bard's three patents were invalid and, separately, that Bard's access ports violated MedComp's own patent with U.S. patent numbers 8,021,324 ("the '324 patent"). ECF No. 750-1 ("Def.'s '324

2

Patent"); ECF No. 643 ("Def.'s Second Am. Answer & Counterclaims").[2] The court addressed the parties' motions for summary judgment and the resolution of claim construction disputes and generally ruled in favor of Bard—entering summary judgment against MedComp's counterclaim on the grounds that its '324 patent was invalid, denying MedComp's motion for summary judgment on the grounds that it had failed to establish the invalidity of Bard's patents, and agreeing with Bard on many of the claim construction disputes. ECF No. 946 ("Summ. J. & Claim Construction Mem. Decision & Order"); ECF No. 894 ("Pls.' Summ. J. Mot.")[3]; ECF No. 896 ("Def.'s Summ. J. Mot."); ECF No. 909 ("Joint Claim Construction Mot."). MedComp moved for reconsideration and certification for interlocutory appeal. ECF No. 949 ("Def.'s Reconsideration & Certification Mot."). The court denied the motion. ECF No. 1009 ("Reconsideration & Certification Mem. Decision & Order").

Now, the court addresses the following motions brought by MedComp: (1) a motion for leave to amend its final invalidity contentions; (2) a motion to strike portions of one of Bard's expert reports; and (3) a motion for leave to supplement its own expert reports. Def.'s First Mot.; Def.'s Second Mot.; Def.'s Third Mot. Some of these motions implicate a 2025 Federal Circuit opinion, which was issued in a related case between Bard and AngioDynamics, Inc. involving similar patents. *See C.R. Bard, Inc. v. AngioDynamics, Inc.*, No. 2023-2056, 2025 WL 3627397 (Fed. Cir. Dec. 15, 2025) (hereinafter, *AngioDynamics 2025*). *See* Reconsideration & Certification Mem. Decision & Order at 14–15.

---

[2] ECF No. 641 (redacted). After the first cite to any sealed docket entry, the court will provide the corresponding redacted entry.

[3] ECF No. 892 (redacted).

**DISCUSSION**

**I.      Motion for Leave to Amend Final Invalidity Contentions**

MedComp first moves for leave to amend its final invalidity contentions to add references to the Adult Titanium Port ("ATP"), Bard's own product, and other prior art in light of the court's ruling on claim construction—specifically, the court's holding that Bard's patents contain claim limitations entitled to patentable weight that its claimed access ports are power injectable. Def.'s First Mot. at 2–3; Summ. J. & Claim Construction Mem. Decision & Order at 9, 20. MedComp seeks to add additional references to prior art to show that these power injectability limitations were contained in the prior art, rendering Bard's patents invalid even under the court's interpretation. Def.'s First Mot. at 2.

This request is governed by the District of Utah Local Patent Rules ("LPRs"), which allow the court to permit a party to amend its final contentions "[u]pon a showing of good cause and no unfair prejudice to opposing parties." LPR 3.4(b). The LPRs require a party to move to amend its contentions "[n]o later than 14 days after the discovery of the basis for the amendment." *Id.* 3.4(a). The court denies this request.

At the outset, it appears that MedComp has simply failed to follow the LPR's fourteen-day requirement because its motion was filed on November 7, 2025, months after the court's August 26, 2025 claim construction order. *See* ECF No. 970 ("Pls.' First Mot. Opp'n") (further explaining this violation).[4] The fact that MedComp hoped the court would grant its motion for reconsideration, potentially eliminating the need to cite the new prior art, does not change the fact that MedComp had already discovered the basis for amendment—causing LPR 3.4(a)'s clock to

---

[4] ECF No. 968 (redacted).

start running, if it had not already expired. In any event, MedComp clearly lacked diligence because it added prior art references to its expert reports first and only moved to amend its final invalidity contentions after Bard raised objections. *See* Def.'s First Mot. at 4 (acknowledging this timeline). This demonstrates a lack of good cause and provides a basis for denying the motion. *See Shenzhen Mengdan Tech. Co. v. Rvlock & Co, LLC*, No. 1:24-CV-00062-HCN-DBP, 2025 WL 2689398, at *2 (D. Utah Sept. 19, 2025) ("[T]o establish good cause, the moving party must first demonstrate diligence in amending its contentions.").

In supplemental briefing, MedComp argues that the additional references are justified by *AngioDynamics 2025*, which it represents "as jurisprudential sea change that fundamentally alters the evidentiary landscape of this litigation by attributing greatly heighted relevance to prior art that was previously considered cumulative." ECF No. 992 ("Def.'s Suppl. Br. First Mot.") at 1. But *AngioDynamics 2025*, a non-precedential decision, merely applied the legal framework articulated in *AngioDynamics 2020*. *See AngioDynamics 2025*, 2025 WL 3627397, at *2–3. And to the extent that *AngioDynamics 2025* issued surprising holdings about how this legal framework applied to the facts before the Federal Circuit, these holdings apply to different patent claims with different priority dates and are based on a different body of evidence. MedComp thus fails to explain how *AngioDynamics 2025* justifies disrupting the litigation schedule or excuses its lack of diligence.

Separately, MedComp's claims about a lack of prejudice to Bard ring hollow. Def.'s First Mot. at 8–9. At the bare minimum, MedComp's proposed amendments will cause delay by necessitating additional work and discovery. Even with respect to the ATP, which is Bard's own product, Bard's counsel represented that it would take substantial effort to acquire relevant information because it was developed and sold by Bard decades ago. And Bard would face further prejudice because it has developed its own legal theories in reliance on MedComp's final invalidity

contentions, which it will be unable to adjust in response to the new prior art without further delaying this already drawn-out case. That is, MedComp's request threatens to put Bard in the unenviable position of either (1) proceeding at a strategic disadvantage because of the last-minute additions to this case or (2) further protracting this fourteen-year case. Foisting that dilemma upon Bard is neither fair nor permissible under the LPRs. *See* LPR 3.4(b) (only permitting amendment of final invalidity contentions upon "a showing of good cause *and no unfair prejudice to opposing parties*") (emphasis added).

In the alternative, MedComp requests that its experts be permitted to reference ATP and other prior art "to demonstrate the level of ordinary skill in the art and the common knowledge and common wisdom of skilled artisans." Def.'s First Mot. at 10–12. But "a party may not use an expert report to introduce . . . new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *LoganTree LP v. Garmin Int'l, Inc.*, No. 17-1217-EFM-ADM, 2021 WL 5998293, at *14 (D. Kan. Dec. 20, 2021) (quoting *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 946 (N.D. Cal. 2018)); LPR 2.4(d)(1)(A)(i) (requiring that invalidity contentions "identify . . . *each* item of prior art that allegedly invalidates, alone or in combination, each asserted claim" in its invalidity contentions") (emphasis added). Indeed, inserting these new prior art references into the case through expert testimony plausibly would constitute impermissible "gamesmanship [that] would conflict with the spirit of the [LPR]s, which exist 'to ensure early crystallization of the parties' theories.'" *Jenam Tech, LLC v. Google LLC*, 630 F. Supp. 3d 1208, 1215 (N.D. Cal. 2022) (quoting *Trusted Knight Corp. v. Int'l Bus. Machines Corp. (IBM)*, No. 19-CV-01206-EMC, 2021 WL 5205522, at *2 (N.D. Cal. Nov. 9, 2021)).

Thus, the court denies the motion with respect to both its primary and alternative requests. While the court retains some discretion to "modify the obligations and deadlines in the[] LPRs when doing so will advance the just, speedy, and inexpensive determination of the case," all these factors point in favor of hewing closely to the LPRs and point against further disruption as this protracted case finally approaches trial. LPR 1.1(c).

## II.      Motion to Strike Portions of Expert Report

Next, MedComp moves to strike portions of one of Bard's expert reports under Federal Rule of Civil Procedure 37(c)(1). Def.'s Second Mot. Specifically, it moves to strike two portions of John M. Collins's opening expert report because it invokes the following theories that are outside the scope of Bard's final infringement contentions: (1) new allegations that MedComp's Pediatric Dignity Low Profile port ("the Pediatric Port") infringed on Bard's patents contained in paragraph 138; and (2) a new doctrine-of-equivalents analysis contained in paragraph 238. *Id.* at 2. But at the hearing Bard's counsel conceded that the portion of Collins's opening expert report containing the new doctrine-of-equivalents analysis should be struck. Accordingly, the court strikes this section of Collins's report and needs only address the remaining half of the motion.

Rule 37(c)(1) creates automatic sanctions for a party that fails to provide proper disclosures regarding witnesses and evidence under Federal Rule of Civil Procedure 26(a) or (e) "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). But this rule appears inapt because MedComp's motion is solely predicated on violations of the LPRs—specifically, the rules governing initial and final infringement contentions—and does not explain how the allegedly

new arguments in the expert report violate the applicable sections of Rule 26.[5] *See Thorne Rsch., Inc. v. Xymogen*, No. 2:13-CV-784 TS, 2018 WL 815466, at \*2 (D. Utah Feb. 9, 2018) ("There is no Rule 26 violation, so Rule 37(c) does not apply."); *Litle & Co. v. Mann*, No. 96-56857, 1998 WL 231202, at \*1 (9th Cir. Apr. 28, 1998) ("Federal Rule of Civil Procedure 37(c) does not explicitly provide for sanctions for the violation of local rules."); Def.'s Second Mot. at 6–7 (relying on the LPRs and failing to discuss Rule 26).

Instead, the court construes MedComp's motion as a motion for sanctions under Federal Rule of Civil Procedure 16(f). Because the LPRs "are essentially a series of case management orders," an LPR violation constitutes a "fail[ure] to obey a scheduling or other pretrial order" and falls within the ambit of Rule 16(f). *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006); FED. R. CIV. P. 16(f)(1)(c). Unlike Rule 37(c)'s automatic sanctions, the court has "very broad discretion" to issue sanctions under Rule 16(f). *Comcoa, Inc. v. NEC Telephones, Inc.*, 931 F.2d 655, 666 (10th Cir. 1991). *See also Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1020 (Fed. Cir. 2019) (noting that "the exclusion of evidence is often an appropriate sanction for a party's failure to comply with the patent local rules"); *Medline Indus., Inc. v. C.R. Bard, Inc.*, 511 F. Supp. 3d 883, 889, 901 (N.D. Ill. 2021) (striking portions of an expert report under Rule 16(f) for failure to comply with local patent rules). Thus, the court engages in a two-part inquiry: It first determines whether MedComp has identified an LPR violation and then considers whether any identified violation warrant sanctions under Rule 16(f).

---

[5] Specifically, it appears that the report itself fully complies with the disclosure requirements related to expert witnesses articulated in Federal Rules of Civil Procedure 26(a)(2) and 26(e)(2). MedComp appears to be arguing that these arguments contained in the expert report were not properly disclosed in Bard's invalidity contentions or constitute an impermissible amendment, but such obligations are based on the LPRs rather than Rules 26(a) and 26(e).

With respect to the first inquiry, MedComp argues that Bard violated its duty under the LPRs "to identify each accused product . . . with specificity" by failing to properly disclose the Pediatric Port. Def.'s Second Mot. at 6–7. *See* LPR 2.1 (imposing requirements on parties to "disclose a list identifying each known apparatus, product, device, process, method, act, or other instrumentality of the opposing party which allegedly infringes one or more asserted patent claims"). Bard, in response, primarily argues that it adequately complied with its disclosure responsibilities by informing MedComp that it was challenging "Dignity® Low Profile"—which Bard understood broadly as "a type of port sold in a number of configurations," with the Pediatric Port being one of these configurations. *See* ECF No. 981 ("Pls.' Opp'n Second Mot.") at 4–5.[6] But this general disclosure fails to identify the Pediatric Port with the required "specificity," especially in light of the substantial commercial differences between pediatric and adult medical devices. *Vivint, Inc. v. Alarm.com Inc.*, No. 2:15-CV-392, 2020 WL 3871346, at *8 (D. Utah July 9, 2020). *See* ECF No. 989 ("Def.'s Reply Second Mot.") at 4 (outlining several important commercial differences, notwithstanding physical similarities). In the alternative, Bard suggests that MedComp's production of documents related to the Pediatric Port "confirmed that [it] understood the Accused Products included the pediatric Dignity Low Profile Port." Pls.' Opp'n Second Mot. at 4. However, discovery production alone—especially in a case of this complexity—does not mean that the Pediatric Port was clearly identified as an infringing product, as required by the LPRs. *See also* Def.'s Reply Second Mot. at 9 (representing to the court that "MedComp prepared its defense" on the assumption that the Pediatric Port was outside the scope of Bard's allegations).

---

[6] ECF No. 979 (redacted).

Having found an LPR violation, the court next turns to the question of sanctions under Rule 16(f) and ultimately determines that striking the relevant portion of the report is proper. To be sure, Bard plausibly only violated the LPRs inadvertently. But keeping the Pediatric Port in this case would require granting MedComp additional fact discovery to cure unfair prejudice. *See* Def.'s Second Mot. at 8–9. Because this case has already been pending for fourteen years and all parties concede that the sales of the Pediatric Port were de minimis relative to the sales of the other products at issue in this litigation, the best course is to keep the Pediatric Port out and avoid further delays and disruptions. Pls.' Opp'n Second Mot. at 6; Def.'s Reply at 5. *See* FED. R. CIV. P. 1 ("These rules . . . should be construed, administered, and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action.").

Accordingly, the court grants MedComp's motion and strikes the relevant sections of Collins's opening report under Rule 16(f).

### III.   Motion for Leave to Supplement Expert Reports

Finally, MedComp moves for leave to supplement its opening expert reports to include consideration of the Federal Circuit's *AngioDynamics 2025* opinion. Def.'s Third Mot. at 1. The LPRs codify a presumption against the supplementation of expert reports but permit supplementation "if a change in factual support or legal precedent necessitates the . . . supplement under FED. R. CIV. P. 26(e)." LPR 5.3(a), (b)(2) (small caps added). MedComp argues at length that this exception applies because *AngioDynamics 2025* is "highly relevant" to the opinions expressed in the reports. Def.'s Third Mot. at 3. But, in fact, the 2025 opinion appears to merely "deepen or strengthen" MedComp's existing reports in a manner that is insufficient to justify supplementation. *Smith v. United States*, No. CIV001098JCLFGACE, 2001 WL 37125168, at *4 (D.N.M. May 16, 2001). The 2025 opinion appears relevant only to the extent that it reaffirms a

previous holding on printed matter doctrine from 2020, which was already available to MedComp and its experts. *See AngioDynamics 2025*, 2025 WL 3627397, at *2–3 (citing *AngioDynamics 2020*, 979 F.3d at 1382, 1384). To the extent that *AngioDynamics 2025* offers any new analysis, it relies on trial evidence presented in a distinct case with different patents having different priority dates. *See id.* at *2–5. MedComp fails to explain how this analysis, which implicates different evidence and legal claims, is sufficiently relevant to its expert reports to overcome the strong presumption against supplementation.[7] Therefore, the court denies MedComp's motion for leave to supplement its expert reports.

## CONCLUSION AND ORDER

For the reasons above, MedComp's motions for leave to amend its final invalidity and supplement its expert reports are DENIED and its motion to strike portions of Bard's expert reports is GRANTED. If the parties wish to propose any amendments to the operative scheduling orders in light of the court's memorandum decisions and orders, they must do so within the next fourteen days.

DATED July 10, 2026

BY THE COURT

Jill N. Parrish
United States District Court Judge

---

[7] The court does not need to address whether the non-precedential *AngioDynamics 2025* opinion is "a change in factual support or legal precedent" for the purposes of the LPRs. LPR 5.3(b)(2). If it is neither factual support nor legal precedent, as Bard plausibly argues, then the provision of the LPRs that MedComp invokes would be plainly inapplicable. *See* ECF No. 990 ("Pls.' Opp'n Third Mot.") at 3–6.